Kathleen MOGLIA, Plaintiff-Appellant,

v.

James GEOGHEGAN et al., Defendants-Appellees.

No. 482, Docket 31450.

United States Court of Appeals Second Circuit.

Argued June 4, 1968.

Decided Nov. 6, 1968.

Certiorari Denied March 24, 1969.

See 89 S.Ct. 1193.

Before WATERMAN and FEIN-BERG, Circuit Judges, and ZAMPANO, District Judge.*

WATERMAN, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, dismissing plaintiff-appellant's complaint. Appellant sought a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57, Fed.R.Civ.P., declaring her to be entitled to receive payments under the Pension Plan of Local 282-Pension Trust Fund of $200.00 per month for a period of thirty-six months commencing May 1, 1965; directing appellees, as trustees of said Fund, to make such payments; and awarding her any reasonable attorney's fees incurred by her in enforcing the trust. Jurisdiction in the district court was founded on the existence of a question arising under a statute of the United States regulating interstate commerce, the Labor-Management Relations Act of 1947, § 302, 29 U.S.C. § 186, making the action one of which the district court had original jurisdiction pursuant to 28 U.S.C. § 1337. Appellees moved for summary judgment on the ground that appellant was not entitled to the relief she sought. Appellant also moved for summary judgment. Appellant's motion was denied and appellees' motion was granted. The learned district judge explained the result he reached in a reasoned opinion which contained the detailed facts involved. His opinion is reported at 267 F.Supp. 641 (D.C. 1967). We affirm the result reached below.

Appellant is the widow of John J. Moglia (Moglia) who died on August 7, 1966. At all times relevant to this case Moglia had been a member in good standing of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 282 (Local 282), a labor organization representing employees of employers within the meaning of Section 302

Herman Englander, Englander & Englander, New York City, for plaintiff-appellant.

Samuel J. Cohen, Stanley M. Berman, Cohen and Weiss, New York City, for defendants-appellees.

* Of the District of Connecticut, sitting by designation.

(a) (2), Labor-Management Relations Act of 1947; 29 U.S.C. § 186(a) (2).

Appellees are the Trustees (Trustees) of the Local 282-Pension Trust Fund (Fund) which was established in 1955 by Local 282 and various employers who had entered into collective bargaining agreements with the Local. The Fund was the successor of other trust funds in which the Local had theretofore participated and was created by execution of an agreement and declaration of trust (trust agreement).

The trust agreement authorized the Trustees to receive payments from employers who signed collective bargaining agreements with the Local requiring such payments. The trust agreement specified that the Fund be used to provide retirement benefits for employees of contributing employers pursuant to a Pension Plan to be formulated by the Trustees.

The Fund was supposed to be maintained in strict conformity with Section 302(a) and (b) and with Section 302(c) (5) of the Labor-Management Act of 1947. Section 302(a) and (b) provide as follows:

(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce;

\* \* \* \* \* \*

(b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

Violations of Section 302 are punishable by criminal penalties. Section 302 (d) provides:

(d) Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both.

Section 302(c) (5) establishes *limited* exceptions to subsections (a) and (b) for payments to trust funds which meet *specified* requirements. The statutory requirements are that the employer's payments be made

\* \* \* to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided,* that (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and em-

ployee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; * * *.

The trust agreement was written to conform with the statutory mandate and spelled out limitations upon payments into and out of the Fund. It is uncontroverted that the trust agreement at all times contained the limitations required by Section 302.

From July 1, 1953, through March 31, 1965, Moglia's employer for twenty-eight years, Elmhurst Contracting Co., Inc., or its successor (Elmhurst), made payments into the Fund on behalf of Moglia and other employees and such payments were received and accepted by the Fund. During this period, the books of Elmhurst were regularly audited by auditors for the Fund to assure that the payments being made were in the proper amounts.

On April 15, 1965, listing Elmhurst as his only employer, Moglia filed an application for a pension with the Fund. It is uncontroverted that Moglia's age, length of service, and other qualifica-

tions for benefits under the Pension Plan of the Fund at the time of the filing of his application for a pension, and up to the time of his death, were such that, if he were entitled to benefits under the Pension Plan, he would have been entitled to payments for life commencing May 1, 1965, at the rate of $200.00 per month. If Moglia was entitled to these payments and he did not receive them during his lifetime, appellant, as his widow, would be entitled, pursuant to the provisions of the Pension Plan, to receive them for a period of thirty-six months, commencing May 1, 1965.

For some reason, the Fund does not investigate pension eligibility until after an application for pension benefits has been filed, and, after Moglia applied, an investigation of Elmhurst's status with the Fund revealed that Elmhurst had never entered into a collective bargaining agreement or a pension trust agreement with the Local although the Local had often requested it to do so.

The facts surrounding Moglia's application were reported to the Trustees at a meeting on June 15, 1965, but action on the application was deferred until the Trustees had an opportunity to consult with counsel. They were advised by counsel that payment to Moglia was prohibited by the Labor-Management Relations Act of 1947 and by the trust agreement, and that Moglia's application must be denied. They were also advised that the Labor-Management Relations Act of 1947 and the trust agreement prohibited them from accepting Elmhurst's payments. Accordingly, Moglia's application was rejected by the Trustees, and all the Elmhurst payments were refunded to Elmhurst. Elmhurst refused to accept the refund pending termination of the present litigation, and its payments are now being held apart from the rest of the Fund to be disposed of in accordance with the final determination of this action.

The question presented to us by appellant is whether she is entitled to receive pension benefit payments from the Local 282-Pension Trust Fund not-

withstanding the fact that there never has been a written collective bargaining agreement or any other written agreement between Elmhurst and Local 282 detailing the basis upon which payments were to be made by Elmhurst, on behalf of its employees, into the Trust Fund. The answer to this question involves a construction of the relevant language of Section 302 of the Labor-Management Relations Act of 1947.

Appellant first contends that the written agreement requirement contained in subsection 302(c) (5) (B) applies only to payments made by employers into the Fund and not to payments made by the Trustees out of the Fund to employees, and, therefore, the Trustees would not be violating Section 302 by making payments to appellant.[1] However, we hold that, inasmuch as both Elmhurst's payments into the Fund and the Trustees' receipt of said payments were prohibited by Section 302 in the absence of a written agreement as required by subsection 302(c) (5) (B), appellant was not a person who could, under Section 302, lawfully be paid pension benefit payments from the Trust Fund.[2]

Section 302 was originally passed as part of the Taft-Hartley Act of 1947. The Section's purpose was to curb the abuses, discovered by Congress after extensive investigation, which seemed to be inherent in funds created and maintained by contributions exacted from employers but which were administered by union officials without any obligation to account to the contributors or to the union membership. See, e. g., 92 Cong.Rec., Part 4, 79th Cong., 2d Sess. 1946, p. 4893 (Senator Byrd), p. 4897 (Senator Knowland), p. 4894 (Senator Ball); S.Rep. No. 105, 80th Cong., 1st Sess., 52 (1947); 93 Cong.Rec., Part 4, 80th Cong., 1st Sess. 1947, p. 4678 (Senator Ball), p. 4678 (Senator Byrd), pp. 4746 and 4747 (Senator Taft). In 1959, Section 302 was amended to include within its ambit conduct which had been held to be outside Section 302 but conduct that Congress felt was of the type Section 302 was originally aimed at prohibiting. 1959 U.S.Code Cong. & Ad.News, 2326–30, 2360–70. A reading of the legislative history of Section 302 shows that Congress intended to prohibit the establishment of any union funds by means of employer payments unless the funds conformed in all respects with the specific dictates of Section 302(c). E. g., 92 Cong.Rec., Part 4, 79th Cong., 2d Sess. 1946, supra; 93 Cong.Rec., Part 4, 80th Cong., 1st Sess. 1947, supra; 1959 U.S.Code Cong. & Ad.News, supra; see International Longshoremen's Ass'n v. Seatrain Lines, Inc., 326 F.2d 916, 919–920 (2 Cir. 1964); Bey v. Muldoon, 217 F.Supp. 401 (E.D. Pa.1962).

1. We are of the belief that the question of whether the written agreement requirement of Section 302 applies to payments out of the Fund would only arise if, though there were an employer-union written agreement specifying the basis of employer contributions into the Fund, there was no written agreement setting forth the basis upon which the Fund's monies were to be dispersed. In passing, we note that it is unlikely that Congress, intending to insure that employer contributions to union funds were only for a proper purpose and specifying in detail the manner in which a union pension fund might be established through employer contributions, did not also intend that the manner in which payments were to be made out of the trust fund should be set forth in a written agreement. See Lewis v. Seanor Coal Co., 382 F.2d 437 (3 Cir. 1967), cert. denied, 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968).

2. Blassie v. Kroger Company, 345 F.2d 58 (8 Cir. 1965), cited by appellant, is not contrary to our holding. *Blassie* did not involve pension benefits to employees of employers contributing to a pension trust fund. It involved an entirely different and narrowly limited question, namely whether the trustees of a pension fund could legally pay pension benefits to the fund's own employees as part of their compensation. The court held that such payments were not prohibited by Section 302(a) and (b). The court stated that subsection 302(c) (5) (B)'s requirement of a written agreement applied only to employers subject to collective bargaining with the union and not to the fund vis-à-vis its own employees.

Under Section 302, *any* payment made by an employer to an employee representative, and this includes trustees administering a pension trust fund, see, e. g., United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956); Sheet Metal Contractors Ass'n v. Sheet Metal Workers International Ass'n, 248 F.2d 307 (9 Cir. 1957), cert. denied, 355 U.S. 924, 78 S.Ct. 367, 2 L.Ed.2d 354 (1958), contra, United Marine Division, I.L.A., Local 333 v. Essex Transportation Co., 216 F.2d 410 (3 Cir. 1954), and the receipt of such payments by an employee representative are absolutely forbidden unless there is a written agreement between the employer and the union specifying the basis upon which the payments are made. Thus, in the case of a legally established union pension trust fund, the only employer contributions which may be accepted by the trustees administering the fund are those contributions from employers who have a written agreement with the union as required by subsection 302(c) (5) (B). Absent the written agreement, there is no valid Section 302 trust as to those employer contributions; the parties making and accepting such contributions are violating Section 302, and the intended beneficiary of the illegal employer contributions has no legal right under Section 302 to the benefits normally derived from employer contributions to the trust fund. Only employees and former employees of employers who are lawfully contributing to a union pension trust fund may qualify as beneficiaries of a Section 302 trust. Rittenberry v. Lewis, 238 F.Supp. 506 (E.D.Tenn. 1965); Bolgar v. Lewis, 238 F.Supp. 595 (W.D.Pa.1960).

Appellant makes an appealing argument that Congress intended to encourage and foster the creation and extension of union welfare funds and therefore that this court should not construe Section 302 so as to deny appellants the benefits of this welfare fund. As pointed out by the court below, acceptance of appellant's argument would not necessarily implement the congressional intention although it would provide benefits for the appellant. The reason for the rigid structure of Section 302 is to insure that employer contributions are only for a proper purpose and to insure that the benefits from the established fund reach only the proper parties. Schwartz v. Associated Musicians of Greater N.Y., Local 802, 340 F.2d 228, 233–234 (2 Cir. 1964). Any erosion of the strict requirements of this section could provide an unintended loophole for the unscrupulous, and could result in a diversion of funds away from the proper parties as had occurred before Section 302 was enacted. See Arroyo v. United States, 359 U.S. 419, 423–427, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959); cf. International Longshoremen's Ass'n v. Seatrain Lines, Inc., supra, 326 F.2d at 920.

Our construction of Section 302 may work a hardship in the instant case, especially as neither appellant nor her deceased husband appear to have engaged in any wrongful conduct; but we consider the construction of the statute that we have adopted is the only acceptable one in light of the congressional history and intent. Of course this does not preclude appellant from pursuing any other remedies that may be available to her.[3]

---

3. Our decision in this case does not preclude appellant from seeking further appropriate relief, such as turning over to her the payments already made on her husband's account by Elmhurst to the trustees. Possible grounds upon which recovery might be predicated such as, for instance, unjust enrichment or constructive trust, are still open to appellant inasmuch as it would appear that such causes of action are not yet time-barred by the applicable New York statute of limitations. See New York Civil Practice Law and Rules, McKinney's Consol.Laws, Book 7B, Section 213 (1963). Nor do we preclude the trustees from taking affirmative action to have the sums which Elmhurst refused to take back paid over to appellant.

■ Appellant also asks the court to invoke the theory of equitable estoppel as a basis for allowing pension benefits from the Trust Fund. Appellant argues that the Trustees, having accepted Elmhurst's contributions into the Fund for twelve years, and having regularly audited Elmhurst's books in order to assure that payments were being made in the proper amounts, are estopped from denying pension benefits to appellant on the ground that there was no written agreement between the Local and Elmhurst. Whatever merit this argument may have if directed to the appellee trustees' invocation of the terms of the trust agreement to deny appellant at this late date any pension benefits, a matter we need not decide, the equitable estoppel argument cannot supply the essential element of the written agreement Congress required by subsection 302(c) (5) (B).

The statutory requirement of a written agreement is not a minor technicality which may be dispensed with when, there being no written agreement, the acts of one party may be said to estop him from defending on that ground. A written agreement is necessary before payments may be made under the section. As compelling and as appealing as appellant's case is, the structure of the section and the Congressional intent underlying the section preclude any judicial inroads into its rigid, specific requirements.[4]

■ Appellant conceded in the district court that at no time relevant to the cause of action asserted in her complaint there was a collective bargaining agreement or any other written agreement, as such, between Elmhurst and the Local.[5] Appellant, now, without intending to qualify her concession, argues that the written agreement requirement of subsection 302(c) (5) (B) was, in

---

4. In support of her estoppel argument appellant points to William Dunbar Co. v. Painters & Glaziers District Council, 129 F.Supp. 417 (D.D.C.1955). There the plaintiffs were employers who sought to enjoin collection of their own payments by a trust fund on the ground that a written agreement had never been signed. The district court, sitting as trier of the facts, concluded:

> The Court does find, so far as the execution of this document is concerned, that it was signed in fact. Whether it is in the status of a lost, misplaced document, or not, there has been a sufficient showing, in the absence of the original, to convince this Court that this document was given life by formal signatures and did exist as a trust obligation. 129 F.Supp. at 422.

The court went on to state in dicta that the employers had been operating under the terms of the trust agreement for years, and hence were etopped from denying that the agreement was valid. This dicta upon which appellant relies is inapposite. It only dealt with the question of whether the employers who had caused a trust fund to make pension payments to their employees could at a later date deny that they had signed a written agreement under which they had been operating for years. In the present case all agree that Elmhurst never signed an agreement with the union.

5. Plaintiff alleged in her complaint that there had been a collective bargaining agreement between Elmhurst and Local 282. This was controverted by the Trustees. Cross-motions for summary judgment followed and were denied. Subsequently plaintiff stipulated that:

> Notwithstanding the allegations contained in * * * [the] complaint * * * or reply, and notwithstanding any statement to the contrary contained in any of the papers submitted in support of plaintiff's motion for summary judgment * * * [the appellant] unconditionally admit[s] that at no time relevant to the cause of action asserted in the complaint was there a collective bargaining, or any other written agreement, between Local Union No. 82 [sic] and either Elmhurst or its successor, either requiring any payments by Elmhurst or its successor to Local 282– Pension Trust Fund or its predecessors, or specifying the detailed basis upon which such payments should be made.

Both appellant and appellees then again moved for summary judgment, and thereupon Judge Ryan denied appellant's motion and granted appellees' motion on the merits, accompanying his denial order with the exhaustive opinion reported at 267 F.Supp. 641 (1967).

fact, satisfied in the instant case. Appellant contends that subsection 302(c) (5) (B) only requires a written agreement and not a signed, written agreement, William Dunbar Co. v. Painters & Glaziers District Council, 129 F.Supp. 417 (D.D.C.1955), and such an agreement in fact existed in the form of the unsigned collective bargaining agreement which was attached to the unsigned trust agreement governing the Fund. According to appellant, Elmhurst's conduct and action in observing the terms of the collective bargaining agreement attached to the trust agreement by paying uniform union scale wages and by making contributions to the trust fund were tantamount to ratification and adoption of a written agreement by Elmhurst even though it had not signed it. We do not agree with appellant's analysis.

In the first place, the *Dunbar* case involved a situation where employers were disputing their obligation to contribute to a union trust fund in the absence of a signed, written trust agreement. The district court in *Dunbar* found *as a fact* that, at one time previously, there had been in existence a valid, formal, written trust agreement, and that the original signed copy of this agreement had disappeared and only an unsigned copy remained. The question before the court in *Dunbar* was whether the employers could be compelled to contribute to the trust fund on the basis of the duplicate written agreement bearing no signatures. On these facts the district court held that subsection 302(c) (5) (B) only required a written and not a signed agreement. *Dunbar* is clearly factually distinguishable from the instant case.

In the second place, ratification and adoption are only forms of acceptance of a contract and must conform to the general principles governing the formation of contracts. Two essential elements of a contract formation are mutuality of agreement and mutuality of obligation. See, generally, 17 C.J.S. Contracts § 1(1) (1962). Both of these elements are missing in this case. The union demanded the acceptance of a complete collective bargaining agreement along with the trust agreement.[6] Elmhurst did not appear to be willing to accept these terms at any time. In such a situation it would be ridiculous to assert that there was agreement between the parties and a mutuality of obligation. Therefore, on the record as made, we hold that there was no ratification of, or any adoption of, the collective bargaining agreement by Elmhurst.

Appellant has raised a number of questions relating to the possible abuse of discretion on the part of the trustees in so construing the trust agreement as to prevent them from paying benefits to the appellant. As we are holding that it would be illegal for the trustees to retain the contributions of Elmhurst or to pay

6. It is true that the Local would allow employers to participate in the Fund *before* a collective bargaining agreement had been executed between the Local and the employer if the employer would agree to adhere to the terms of the trust agreement. Article I, § 1, of the trust agreement defined an employer who may contribute to the fund as an

\* \* \* employer who has duly executed a collective bargaining agreement with the Union and who is a signatory to this agreement, and also any employer not presently a party to such collective bargaining agreement who hereafter executes such agreement provided that such employer satisfies the requirements for participation as established by the Trustees and agrees to be bound by the terms and provisions of this Agreement and Declaration of Trust, and becomes a party hereto.

But it is clear that this exception was not intended to be a permanent exception. As we read the trust provision, the Local is only willing to allow employers who agree to the trust and are in the process of negotiating or executing a complete collective bargaining agreement with the Local to participate in the Fund during the interval before the collective bargaining agreement is formally signed. It does not permit an employer to participate without ever signing an agreement.

benefits to appellant, it is not necessary to discuss these contentions for they relate only to the proper interpretation of the trust agreement or to the power of the Trustees under the agreement to deny pension benefits to the appellant.

We realize that other claimants to union welfare funds and perhaps even other claimants to this very pension trust may find themselves in the position of appellant.[7] Nevertheless, the proper remedy for such a regrettable situation is not the enforcement of a claimant's rights under the trust because that would allow evasion of a carefully drafted statute. The congressional scheme, if properly enforced by government attorneys, is designed to prevent this unfortunate situation from ever arising. Employing Plasterers' Association of Chicago v. Journeymen Plasterers' Protective and Benevolent Society of Chicago, Local No. 5, 279 F.2d 92, 97–98 (7 Cir. 1960). If the sanctions provided by Section 302(d) had ever been invoked here, neither the Trustees of this particular fund nor the trustees of any other similarly situated fund would ever permit the state of affairs to reach this deplorable condition.[8]

Affirmed.

7. In their Answer to appellant's complaint, the Trustees stated that:

The issues raised in this action may be expected to arise in future situations involving applications for benefits under the Pension Plan of Local 282–Pension Trust Fund * * *.

The Trustees of this Trust Fund have made a practice of accepting employer contributions without checking the Local records to ascertain whether or not the contributing employer has a written agreement with the Local detailing the basis upon which employer payments are to be made into the Fund. Instead of checking records when the contributions are received, as Section 302 requires, the Trustees have waited until an application for a pension is made by an employee of a contributing employer and then have checked to see if the employer's contributions and the Trustees' acceptance of the contributions conformed with both the Section 302 requirements and the provisions of the trust agreement. If the contributions and acceptance of the contributions were in violation of Section 302 or the trust agreement or both, then the innocent employee's pension request is denied. This practice has caused needless hardship in this case and could cause hardship in other cases involving innocent employees. Those engaged in the future in such lackadaisical adherence to the mandates of Section 302 should bear in mind that Congress has provided appropriate penalties for those who take too lightly the requirements of that section.

8. At 267 F.Supp. 641, 643, 648, the district judge appears to indicate by dicta that a present execution by the employer of the collective bargaining and trust agreements could validate the 36 months of pension payments appellant claims were payable to her month by month from May 1, 1965 to April 1, 1968, and could legalize the abortive payments by Elmhurst to the Fund. Though we approach the resolution of the dispute between the parties by the same route taken by the district judge we point out that we are not adopting this dicta.