RAWLS, Acting Chief Judge.
This appeal arises out of a contractual dispute between an association of labor unions and a contractor as to the payment by the contractor of fringe benefits. Appellants, trustees of certain trust funds, filed their complaint. Appellant Sea is one of the trustees and the business representative of the Carpenters District Council of Jacksonville, and appellee Acousti is a construction company.
Acousti and the union operated under a collective bargaining agreement that terminated on May 1, 1974. A new agreement was negotiated between an association of general contractors of which Acousti was a member and the union, which provided that the employer would make certain payments to trust funds designated as an apprenticeship fund, a health and welfare fund, and a pension and a vacation fund; such being customarily referred to as “fringe benefits”. This “new agreement” was reached during the latter part of April, 1974. However, Acousti did not formally sign the written agreement until September 13, 1974, although during the period intervening from May 1, 1974, Acousti made substantial pay *1251 ments to the trust funds in accordance with the provisions of the written agreement that it had not executed.
The trial court held that Acousti’s payments for fringe benefits violated the provisions of 29 U.S.C. § 186(c)(5)(B) and (7) (Taft Hartley Act of 1947)[1] and assessed damages against the union trust fund in the sum of $28,356.48; hence this appeal.'
After extensive investigations, Congress discovered abuses which seemed to be inherent in funds created and maintained by contributions exacted from employers, but which were administered by union officials without any obligation to account to the contributors or to union membership. Thus, an essential provision of the Taft Hartley Act of 1947 prohibited the contribution by an employer to any union except in narrow circumstances. The narrow exception with which we are here concerned is found in the following provision, viz:
“ . . . (c) The provisions of this section shall not be applicable ... (5) with respect to money . . . paid to a trust fund . . . Provided . (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer. . .."
The trial court held that the above cited provisions rendered the fringe benefit payments to have been illegal.
Acousti argues in its brief that Moglia v. Geoghegan[2] and Bricklayers, Etc., U. 15, Fla. v. Stuart Plaster. Co., Inc.,[3] mandate an affirmance. We do not agree. Moglia involved a claim to a pension fund which the employer had made contributions. However, an important fact is that the nonunion employer in Moglia had never entered into a collective bargaining agreement with the union. Likewise, Bricklayers is not applicable. In Bricklayers, the collective bargaining agreement was in numerous respects in clear violation of the Taft Hartley Act and, as a result of such violations, the trust funds had been flagrantly mismanaged. The facts in Bricklayers amply demonstrate the foresight of Senator Taft’s explanation that “the purpose of the provision is that the welfare fund shall be a perfectly definite fund, that its purposes shall be that each employee can know what he is entitled to, can go to court and enforce his rights in the fund, and that it shall not be, therefore, in the sole discretion of the union or the union leaders and usable for any purpose which they may think is to the advantage of the union or the employee.”[4]
Unlike the facts in Moglia, Acousti had a valid labor agreement with the union prior to May 1, 1974. Ninety days prior to the expiration of this agreement, negotiations were begun between the association of contractors and the union. A representative of Acousti participated in these negotiations, resulting in the formulation of a written contract which was ratified by the union a few days prior to May 1, 1974. Acousti employed the union members after May 1, 1974; paid them wages and some fringe benefits pursuant to the written contract; and on September 13, 1974, signed the written contract. That the subject written instrument is in compliance with the Labor Management Relations Act has not been questioned. Applying these facts to the legislative purposes of the subject statute, we conclude that Acousti, by its acts, ratified the subject contract as of May 1,1974. The Taft Hartley Act was enacted as a shield for all parties; not as a sword for Acousti’s use.
By cross-assignment, Acousti challenges the trial court’s construction of the following contractual provision, viz:
“Contractors signatory to this Contract agree to pay into the Carpenters District Council of Jacksonville and Vicinity Health & Welfare Fund based on every *1252 hour worked for the Contractors by members of the C.D.C., apprentice hours included, straight time only, according to the schedule under Article XXVI, WAGES.”
requiring the employer to pay fringe benefits at the straight time rate for every hour worked, including overtime. Acousti contends that the plain meaning of this paragraph requires it to make payments on every hour worked — straight time only, i.e., a maximum of 40 hours per week. In support of its construction of the disputed paragraph, Acousti produced Dr. Marly J. Lyde, Professor of English and Chairman of the Division of Humanities, Jacksonville University, who, after diagramming the sentence, opined that “straight time only” modified and qualified the phrase “every hour worked”. We agree. The trial court erred in its construction of the disputed paragraph.
The judgment appealed is reversed and remanded with directions that a final judgment be entered in accordance with this opinion.
SMITH and ERVIN, JJ., concur.

. Labor Management Relations Act of 1947, Pub. L. No. 101, § 302, 61 Stat. 136 (1947).

. Moglia v. Geoghegan, 403 F.2d 110 (2nd Cir. 1968), cert. den. 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969).

. Bricklayers, Etc., U. 15, Fla, v. Stuart Plaster. Co., Inc., 512 F.2d 1017 (5th Cir. 1975).

. Id. quoting 93 Cong. Rec. 4876 (1947).