James A. CAPO, et al., etc., Petitioners,

v.

John BOWERS, et al., Respondents.

No. 01 Civ. 9053(LAK).

United States District Court,
S.D. New York.

Aug. 29, 2002.

C. Peter Lambos, Donato Caruso, Lambos & Junge, New York City, for Petitioners.

Thomas W. Gleason, Ernest L. Mathews, Jr., Gleason & Matthews, P.C., New York City, for Respondents.

## MEMORANDUM OPINION

KAPLAN, District Judge.

An arbitrator determined that James J. Cashin, a retired union officer, is entitled to benefits under a jointly administered, multiemployer, labor-management trust fund, notwithstanding that no contributions were made to the fund by the union in respect of Cashin or, with one incidental exception, any of the union's other employ-

ees before, during or after his employment. The question presented by the cross-motions for summary judgment in this case is whether that aspect of the award must be vacated on the ground that it violates Section 302(c)(5) of the Labor Management Relations Act ("LMRA").[1]

### Facts

The facts of this matter are entirely undisputed, and the parties agree that one side or the other is entitled to summary judgment.

The New York Shipping Association ("NYSA"), a multiemployer collective bargaining representative for employers of longshore workers in the Port of New York and New Jersey, long has been party to collective bargaining agreements ("CBAs") with the International Longshoremen's Association, AFL–CIO ("ILA"), which represents longshoremen and other harbor workers. In furtherance of their CBAs, the NYSA and the ILA have established jointly administered employee benefit trust funds to provide benefits to employees and their beneficiaries. Those relevant to this case are the NYSA–ILA Medical and Clinic Services Fund ("Clinic Fund"), the NYSA–ILA Welfare Fund ("Welfare Fund"), and the NYSA–ILA Pension Trust Fund ("Pension Fund"). All are supported by employer contributions. Contributions to the Welfare and Clinic Funds, unlike those to the Pension Fund, typically are not made on behalf of named individuals and are allocated to those funds according to their needs. These two funds operate essentially on a "pay-as-you-go" basis, paying current benefits and expenses out of current contributions and short-term expenses.

James J. Cashin worked as a public loader from 1950 to 1953. No contributions to any of the funds were made on his behalf during this time. After a four-year stint in the United States Air Force,[2] he worked as a longshoreman in the years 1957–59 during which period contributions were made to both the Welfare and Pension Funds on his behalf by his employers. As the Clinic Fund was not created until 1961, these employers made no contributions on his behalf.

In 1959, Cashin went to work for ILA Local 1804–1, where he remained until 1978, first as business agent and then as secretary-treasurer. Local 1804–1 made contributions on his behalf to the Pension Fund for nineteen years but never made such contributions to either the Clinic or the Welfare Fund.[3] Thus, the only Welfare Fund contributions on his account were made by a NYSA employer for his three years of work as a longshoreman in 1957 to 1959.

In 1996, Cashin began receiving retirement benefits from the Pension Fund and benefits from the Welfare and Clinic Funds. In January 2000, however, management sought to terminate his welfare and clinic benefits on the ground that no contributions ever were made on his behalf to either of those funds. Cashin appealed the termination of Welfare and Clinic Fund benefits to the Clinic Fund's board and requested the Pension Fund to pay to both the Clinic and Welfare Funds any contributions required to enable him to receive benefits. Both the appeal and the

---

1.  29 U.S.C. § 186(c)(5).

2.  Cashin received "credit" for pension purposes for his years as a public loader and in the Air Force despite the fact that no contributions to any fund were made on his behalf. Resp. Mem. at 16.

3.  Respondents stated at oral argument that it was Cashin himself who determined that ILA Local 1804–1 would not contribute to the Welfare Fund.

request to the Pension Fund resulted in deadlocks between the management and union trustees which led to the consolidated deadlock-breaking arbitration under Section 302(c)(5) of the LMRA[4] that culminated in the award here at issue.

Following a hearing, the arbitrator rendered an opinion and award on October 1, 2001. The arbitrator first concluded that Cashin was entitled under the terms of their governing documents to both Clinic and Welfare Fund benefits.[5] Next, he rejected the management trustees' contention that reinstatement of Welfare Fund benefits would violate Section 302(c)(5) of the LMRA, reasoning that the statute's literal requirements were satisfied because Local 1804–1 was an employer that made contributions to the Welfare Fund for the benefit of its employees[6] and that Cashin was an employee on whose behalf an NYSA employer, not the union, had made contributions.[7] In contrast, however, he held that reinstatement of Clinic Fund benefits would violate the statute on the theory that payments to Cashin would not be "for the sole and exclusive benefit" of employees of contributing employers, as the statute requires, because Local 1804–1 never had been a contributing employer. Accordingly, the award directed reinstatement of the Welfare Fund benefits, but declined to order reinstatement of those otherwise available from the Clinic Fund.[8]

Following entry of the award, the management trustees commenced this action to vacate so much of the award as directed reinstatement of Cashin's Welfare Fund benefits and moved for summary judgment. The union trustees and Cashin have cross-moved for summary judgment.[9] No one challenges any aspect of the award other than the direction with respect to the Welfare Fund benefits.

*Discussion*

A. *The Statute*

Section 302(a) of the LMRA provides in relevant part:

"It shall be unlawful for any employer or association of employers ... to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

"1. to any representative of any of his employees who are employed in an industry affecting commerce; or

"2. to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce."[10]

Section 302(b) in turn makes it "unlawful for any person to request, demand, receive, or accept or agree to receive or accept, any payment ... or other thing of value prohibited by subsection (a) of this section."[11] The statute then carves out nine exceptions to these prohibitions. The exception pertinent in this case, the so-

---

4. 29 U.S.C. § 186(c)(5).

5. Award at 15–17.

6. As will appear, it contributed with respect to one employee, not Cashin, in 1975 only.

7. *Id.* at 20.

8. The award declined to order the Pension Fund to make contributions on Cashin's behalf. That aspect of the award is not at issue here.

9. The notice of cross-motion does not specify the relief they seek. Their memorandum of law asks that the petition be dismissed. Resp. Mem. at 2. They have not sought confirmation of the award.

10. 29 U.S.C. § 186(a).

11. *Id.* § 186(b).

called "trust fund exception," excludes, in relevant part:

> "money or [an]other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, ... (or of such employees ... jointly with the employees of other employers making similar payments ...): *Provided,* That (A) such payments are held in trust for the purpose of paying ... for the benefit of employees ..., for medical and hospital care, ...; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund ...; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities...." [12]

## B. Scope of Review

■ Ordinarily, an arbitration award rendered pursuant to the provisions of a CBA is afforded considerable deference and may be vacated, insofar as is relevant here, only if it is in manifest disregard of the law, *i.e.,* if the arbitrator knew of a governing legal principle clearly applicable to the case, but ignored or refused to apply it.[13] Where, however, the arbitrator functions under Section 302(c)(5)(B) of the

LMRA [14] to break a deadlock in the operation of a jointly administered employee benefit fund, he stands in the shoes of the plan trustees, so the arbitrator's action is reviewable under the standard applicable to decisions of plan trustees.[15]

Here, the arbitrator was appointed to resolve a trustee deadlock under Section 302(c)(5)(B). Nevertheless, the award embraced at least two pertinent determinations—that Cashin was entitled to the disputed benefits under the relevant plan documents and that the payment of those benefits was not prohibited by Section 302. In consequence, it perhaps is arguable that different standards would govern review of those determinations. Here, however, petitioners do not challenge the determination that Cashin was entitled to benefits under the plan documents. The only question they tender is whether payment of those benefits would violate Section 302 of the LMRA. The Court's role with respect to that aspect of the award is to accept the arbitrator's interpretation of the plan documents and the facts that he found and then to determine *de novo* whether payment of the benefits would violate the law.[16]

## C. Section 302

Cashin's benefits, if any, would be paid out of current employer contributions to the fund. Petitioners contend, and respondents tacitly concede, that this brings the situation within the proscription of Section 302(a).[17] In consequence, the dispositive

---

12. *Id.* § 186(c)(5).

13. *E.g., New York Tel. Co. v. Comm. Workers Local 1100,* 256 F.3d 89, 91 (2d Cir.2001).

14. 29 U.S.C. § 186(c)(5)(B).

15. *British Motor Car Distrib., Ltd. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371, 378 n. 11 (9th Cir.1989).

16. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *Prudential–Bache Secs., Inc. v. Tanner,* 72 F.3d 234, 241–42 (1st Cir. 1995). *Accord,* Resp. Mem. 10; Pet. Mem. 10–11.

17. This is so for two reasons. The employers' current payments to the Welfare Fund are payments to an employee representative, 29 U.S.C. § 186(a)(1), as the Welfare Fund or, at

question here is whether the relevant payments[18] come within the trust fund exception.

Petitioners rely heavily upon cases, principally in this circuit, for the proposition that trust fund payments to an employee whose union employer did not contribute to the plan take the case out of Section 302(c)(5) and therefore violate the statute.

The wellspring of this line of authority appears to be *Moglia v. Geoghegan*,[19] a case involving principally the question whether the payment of pension benefits to a retired employee violated the statute where employer contributions had been made to the fund on his behalf, but the employer never had entered into a CBA with the union. In the course of resolving that question affirmatively, a unanimous panel observed that "[o]nly employees and former employees of employers who are lawfully contributing to a union pension trust fund may qualify as beneficiaries of a Section 302 trust."[20]

The issue was presented more directly some years later in *Christensen v. New York Times Co. (In re Typo–Publishers Outside Tape Fund)*,[21] a suit by an arbitrator for a determination as to the legality of benefit payments to employees of employers which were parties to CBAs with the union but which had not made contributions to the fund. The Court of Appeals there squarely held that such payments were barred by Section 302, quoting *Moglia's* statement that "[o]nly employees and former employees of employers who are lawfully contributing to [the] union ... trust fund may qualify as beneficiaries."[22]

The most recent treatment of the question is Judge Martin's opinion in *Capo v. Bowers*,[23] which involved essentially the same protagonists, other than Mr. Cashin, now before the Court. The question in that case was whether a retired union official lawfully might be paid pension benefits based (a) only on those of his years in the industry during which pension fund contributions had been made on his behalf

---

least, the union representation on its board of trustees, is a "representative" of the employees of NYSA employers. *E.g., Costello v. Lipsitz*, 547 F.2d 1267, 1277 (5th Cir.1977) (payments by employer association members to jointly administered trust fund made to employee "representative"); *Moglia v. Geoghegan*, 403 F.2d 110, 116 (2d Cir.1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969) (same); *Blassie v. Kroger Co.*, 345 F.2d 58, 67 (8th Cir.1965) (Blackmun, J.) (same); *see United States v. DeKoning*, No. 73–CR–24, 1973 WL 1142, at *2 (E.D.N.Y. May 2, 1973). Second, Welfare Fund payments to Cashin, which the fund would make as a conduit for the employers, would be employer payments of money to a union officer or employee. *Id.* § 186(a)(2). While Cashin is retired from ILA Local 1804–1, his change in status makes no difference. *See Blassie*, 345 F.2d at 70. The policy of Section 302(a) would be undermined by a construction that would allow payments to retired union officers which would be unlawful if made to active union officers because the availability of such payments upon retire-

ment would threaten the undivided loyalty that active union officers owe to union members.

18. *See* Note 17, *supra*.

19. 403 F.2d 110.

20. *Id.* at 116.

While the Circuit did not explicitly say so, its implicit reasoning appears to have been that a trust fund which makes benefit payments *to* employees and former employees of non-contributing employers does not qualify for the trust fund exception because the recipient fund would not be "for the sole and exclusive benefit" of contributing employers. *See* 29 U.S.C. § 186(c)(5).

21. 478 F.2d 374 (2d Cir.1973).

22. *Id.* at 375 (quoting *Moglia*, 403 F.2d at 116) (internal quotation marks omitted).

23. No. 00 Civ. 5950(JSM), 2001 WL 210359 (S.D.N.Y. Mar. 1, 2001).

or (b) a longer period including years of union employment in which no such contributions had been made. The arbitrator ruled in favor of the retiree and the union trustees. But the district court vacated the award, holding, in reliance upon *Moglia* and *Typo–Publishers*, that the payment of benefits to a retired union official based on any period in respect of which no contributions were made violated Section 302.

■ The rule of these cases is soundly based in the language and policy of the statute. The statute is a prophylactic measure designed to prevent employers from giving anything of value to unions and union representatives, except pursuant to the narrowly crafted exceptions, in order to avoid situations in which such transactions might conflict with the undivided loyalty owed to union members.[24] Certainly it is no stretch to say that the making of employer contributions to pay benefits to retired union officers in a situation in which the union never contributed to the fund in respect of its own employees—which is precisely what would occur here if Cashin's benefits were reinstated—

would benefit the union at employer expense and thus create a situation in which union officers might consider themselves beholden to employers who went along with such a situation.[25]

Notwithstanding the logic of petitioners' position and the clarity of the precedent in this Circuit, respondents make a series of arguments for a contrary result. Upon examination, however, they are more rhetorical than substantive.

Respondents begin by asserting that there was nothing sinister or nefarious about the employers' agreement to include Cashin among those eligible to receive benefits,[26] implicitly suggesting that Section 302 is implicated only in cases "of bribery or corruption."[27] But the statute "is concerned with more than conscious wrongdoing."[28] It is intended "to forbid payments 'of all kinds by employers to "representatives",' ... however trifling and innocuous ..."[29] As the Supreme Court has put it, "the statute ... [is] *malum prohibitum*, [and] outlaws all payments, with stated exceptions, between employer and representative."[30] In con-

**24.** *See, e.g., United States v. Phillips*, 19 F.3d 1565, 1574 (11th Cir.1994), *cert. denied*, 514 U.S. 1003, 115 S.Ct. 1312, 131 L.Ed.2d 194 (1995); *Zentner v. Am. Fed. of Musicians of U.S. and Canada*, 237 F.Supp. 457, 463 (S.D.N.Y.1965), *aff'd*, 343 F.2d 758 (2d Cir. 1965).

**25.** Respondents seek to distinguish *Capo* on the ground that the benefit there at issue was a pension, the amount of which depended upon years of qualified service and the funding for which depended upon the years during which contributions were made. The argument is unpersuasive. While the case does differ from this in that respect, its logic—that treatment of a union officer as entitled to benefits on the basis of a period during which his employer was a union that made no contributions to the trust fund is essentially a gift to the union and the officer and therefore prohibited by the statute—applies equally in this case. Moreover, as is discussed more

fully below, Cashin would not qualify for Welfare Fund benefits under the plan documents but for his service with the union.

**26.** In view of the arbitrator's unchallenged determination that Cashin was eligible to receive benefits under the plan documents, the Court accepts that the employers so agreed.

**27.** Resp. Mem. 12–13.

**28.** *Employees' Ind. Union v. Wyman Gordon Co.*, 314 F.Supp. 458, 460 (N.D.Ill.1970).

**29.** *United States v. Ricciardi*, 357 F.2d 91, 99 (2d Cir.1966), *cert. denied*, 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 840 (1966) (quoting *United States v. Ryan*, 232 F.2d 481, 483 (2d Cir.), *rev'd on other grounds*, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956)).

**30.** *United States v. Ryan*, 350 U.S. 299, 305, 76 S.Ct. 400, 100 L.Ed. 335 (1956).

sequence, the lack of any evident sinister aspect here simply is beside the point.[31]

Respondents contend next that contributions to the Welfare Fund were made on Cashin's behalf and that the award should be sustained on that ground.[32] That premise, of course, is true as far as it goes and was persuasive to the arbitrator. But it entirely misses the point.

To begin with, the only such Welfare Fund contributions were made in the 1957 to 1959 period, when Cashin was a dock worker. There were none during his two decades of service as an officer and employee of ILA Local 1084-1. The violation of Section 302 inherent in enforcement of the award in respect of the Welfare Fund benefits would arise from the fact that the union and Cashin, as its representative, would benefit from the employers'—as opposed to the union's—payment of the cost of Cashin's benefits in circumstances in which the union makes no current, and with one trivial exception, made no prior payments in respect of any of its employees. In other words, the vice of the proposed award is the product of the union's failure to contribute to the cost of Cashin's benefits, either by making contributions while he was an active employee or by doing so in respect of its currently active employees. That is not altered by the fact that Cashin happened to work in the industry for a brief period over forty years ago and prior to his lengthy employment by the union. The inescapable fact is that payment of Welfare Fund benefits to Cashin in these circumstances would be a substantial economic boon to the union in respect of which it has not made and will not make any contribution. The statute is intended, at least in part, to prevent precisely that.

The correctness of this conclusion becomes even clearer when one considers the manner in which Cashin, as the arbitrator found, qualified for Welfare Fund benefits under the plan documents. The Welfare Fund Agreement and Deed of Trust defines "eligible employee" by reference to "the Welfare Plan." [33] According to the Welfare Fund's summary plan description, which the arbitrator reasonably found to be or to describe the "Welfare Plan," [34] a retired employee such as Cashin, insofar as is pertinent here, is eligible for benefits if he is "at least 62 years of age and ha[s] a minimum of 25 years of credited service and [is] receiving a Service Retirement Pension from the NYSA–ILA Pension Fund." [35] While the term "credited service" is not defined anywhere in the Welfare Plan documents,[36] Cashin's eligibility under those documents depends upon his

---

**31.** *Caterpillar, Inc. v. Int'l Union, United Auto., Aerospace and Ag. Implement Workers of Am.,* 107 F.3d 1052 (3d Cir.1997) (*en banc*), *cert. dismissed,* 523 U.S. 1015, 118 S.Ct. 1350, 140 L.Ed.2d 463 (1998), is not to the contrary. The case dealt with the scope of the Section 302(c)(1) exception, which is not at issue here. The Third Circuit majority's reference to the fact that the payments in question did not arise "out of some 'back-door deal' with the union," *id.* at 1056, was unnecessary to the result, dealt with a different exception, and in any case is inconsistent with the law in this circuit.

**32.** Resp. Mem. 16–17.

**33.** Joint Exhibit ("JX") 4, Agreement and Deed of Trust, art. I, § 2; art. III, § 2 (contained in volume 1 of the arbitration record exhibits); *see* Award at 17.

The Agreement and Deed of Trust refers also to "Eligible Pensioners" without defining that term.

**34.** *Id.*

**35.** Award at 16–17.

**36.** The term is defined in the Agreement and Deed of Trust of the Pension Fund. JX 2, at 9–10. As will appear, the question whether this definition was intended to control for purposes of the Welfare Fund is immaterial.

years as an ILA Local 1804–1 officer being included as "credited service," as he was employed as a longshoreman for no more than eight years. Thus, Cashin qualified for Welfare Fund benefits under the plan documents only by virtue of his ILA Local 1804–1 employment. As the union never made any contributions in respect of his employment, the consideration of the years of his union employment in determining his eligibility is a gratuitous benefit to the union and to Cashin that falls squarely within the rationale of *Capo*.

Third, respondents contend that union contributions cannot have been necessary, as there is no basis in the plan documents by which to determine precisely what contributions are or were required.[37] That appears to be incorrect,[38] but in any case it would be beside the point. Any failure of the plan to set forth a basis for determining the contributions required of the union for providing Welfare Fund benefits to its retired officers, while regrettable, could not obscure the fact that the payment of such benefits absent appropriate contributions would be a forbidden economic benefit to both ILA Local 1084–1 and to Cashin.

Next, respondents argue that ILA Local 1084–1 was a contributing employer because it briefly (and probably mistakenly, although the Court does not rely upon that assumption) made contributions to the

Welfare Fund in 1975 on behalf of an employee named Cervantes.[39] With due respect, it is difficult to see why that should matter. As indicated above, the problem here, were the award enforced, would be that the union never has contributed, and never would contribute, to the cost of Cashin's benefits, whether by making contributions while he was an active employee or by doing so in respect of its currently active employees. Both therefore would be receiving something of value in circumstances prohibited by the Act.

Finally, respondents contended at oral argument that it would be inappropriate to preclude the payment of benefits to Cashin, as there are many retirees of NYSA employers that have left the Port of New York and, consequently, no longer make Welfare Fund contributions who nevertheless now receive benefits. But respondents miss the point. What Section 302 prohibits is payments to non-contributing unions and their officials. It does not bar payments to employees of other non-contributing employers, as these do not create the same risks to fair representation by labor organizations as are created by payments to unions and their employees.[40]

*Conclusion*

In the last analysis, the analysis here is fairly straightforward. Congress in sub-

---

37. Resp. Mem. 17–18.

38. The fund trustees have determined that unions are to pay man-hour rates contained in the industry's master labor contract on 1,600 hours for each union officer or employee for whom it desires coverage. I Arbitration Record 48–50, 84–86. Locals other than ILA Local 1084–1 typically have made contributions on this basis to all three funds with respect to their officers and employees. ILA Local 1084–1, with one 27–year old exception, made payments only to the Pension, but not to the Welfare and Clinic Funds. *Id.* 50–51.

39. Resp. Mem. 26–27.

40. Whether the payment of benefits to retirees of NYSA employers who have left the Port and no longer contribute to the Welfare Fund would disqualify the Fund as a Section 302(c)(5) trust, on the theory that contributions by current employers would not be for the sole benefit of their employees and those "of other employers making similar payments," as respondents suggest, is a question that need not be reached in order to decide this case.

stance has prohibited unions and employee representatives from receiving anything of value from employers except in circumstances specifically defined in the statute. It is clear in this Circuit that the payment of employee benefits to union employees, present and retired, in respect of which the union has not made and does not make contributions is forbidden. Enforcement of this award would compel precisely that forbidden conduct.

Accordingly, the petitioners' motion for summary judgment vacating so much of the award as directed reinstatement of Cashin's Welfare Fund benefits is granted. The respondents' motion for summary judgment dismissing the petition is denied. Judgment accordingly.

SO ORDERED.