**Glenn MERRIMEN, et al., Plaintiffs–Appellants,**

v.

**PAUL F. ROST ELECTRIC, INC., Defendant–Appellee.**

No. 87–5797.

United States Court of Appeals, Sixth Circuit.

Argued April 1, 1988.

Decided Nov. 4, 1988.

Edward A. Stumpp (argued), Stoll, Keenon and Park, Lexington, Ky., for plaintiffs-appellants.

Bradford L. Cowgill, Debra H. Dawahare, Wyatt, Tarrant and Combs, Lexington, Ky., Michael E. Evans (argued), Nashville, Tenn., for defendant-appellee.

Before WELLFORD and NORRIS, Circuit Judges, and COOK, District Judge.*

---

JULIAN ABELE COOK, Jr., District Judge.

Appellants, trustees for the International Brotherhood of Electrical Workers (IBEW) Local 183 Welfare Fund and other IBEW pension trust funds (the pension funds), seek to recover pension contributions from the Appellee, Paul F. Rost Electric, Inc. (Rost), under a multi-employer collective bargaining agreement (CBA) with the Central Kentucky Chapter of the National Electrical Contractors' Association (NECA). The CBA states that it "shall apply to *all firms* who sign a *Letter of Assent* to be bound by this Agreement."[1]

On May 15, 1985, Rost began work as the general electrical contractor for a construction project at the Southeast Baptist Regional Hospital in Corbin, Kentucky. Between that date and May 1986, Rost paid wages to its employees on the project in accordance with the CBA, and made contributions on its employees' behalf to the pension funds in accordance with the CBA and the relevant pension trust agreements.

In May 1986, Rost halted its payments to the pension funds for the duration of the Corbin hospital project. On January 16, 1987, the Appellants filed suit in a Kentucky state court to recover the unpaid contributions. The cause was thereafter removed to the federal district court.

On February 27, 1987, Rost moved to dismiss the action on the ground that it had "never signed or entered into any written agreement of any type, in the nature of a collective bargaining agreement or otherwise, with [IBEW] Local 183."[2]

In response, the Appellants argued that their Complaint had adequately asserted that Rost was bound by the CBA despite having failed to sign the "Letter of Assent." To support this position, they argued that (a) Rost had paid wages and fringe benefits to its workers in accordance with the CBA through April 1986, and (b)

---

\* The Honorable Julian Abele Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Agreement at 1 (J/A 122) (emphasis in original). All references to "J/A" are to the Consolidated Joint Appendix on Appeal which was filed on November 19, 1987 in conjunction with the instant appeal.

2. Affidavit of Richard E. Rost, Vice President of Paul F. Rost Electric, Inc., in support of motion to dismiss (J/A 152).

at least one grievance against Rost which arose during the Corbin project was handled through CBA grievance procedures.[3] The Appellants also claimed that a copy of the CBA had been mailed to Rost, who gave verbal assurances that the "Letter of Assent," which had also been enclosed, would be signed.[4]

The District Court held that the CBA (a) required a signature of assent in order to bind an employer, and (b) did not apply to Rost under section 302(c)(5)(B) of the National Labor Relations Act, as amended, 29 U.S.C. 186(c)(5)(B), which required a "written agreement" to underlie any employer obligation to pay benefits into an employee trust fund.[5] Accordingly, the Court dismissed the action under Fed.R.Civ.P. 12(b)(6) because of the Appellants' failure to state a claim upon which relief could be granted.

The dispositive question on this appeal is whether, as a matter of law, an employer's intent to be bound by the pension provisions of a CBA may be inferred from the employer's conduct alone, despite its undisputed failure to adopt or promise to adopt the agreement in a writing.

Section 302(a) of the Labor Act, 29 U.S.C. 186(a), restricts the circumstances under which an employer may contribute monies to employee groups. However, this general prohibition on contributions

> shall not be applicable ... (5) with respect to money or other thing of value paid to a trust fund established by such [employee] representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents ... [p]*rovided*, [t]hat ... (B) the detailed basis on which such payments are to be made is specified in a *written agreement* with the employer....

29 U.S.C. 186(c) (emphasis added).

"The objective behind this general prohibition [is] to prevent the misappropriation and dissipation of monies due the workers by union officials." *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). A violation of section 302 makes an employer's contributions to employee groups illegal. *Bricklayers Local 15 v. Stuart Plastering Co.,* 512 F.2d 1017 (5th Cir.1975) (a single trust fund received pension and health benefit remittances in violation of section 302(c)(5)(C)). Courts have "required strict compliance" with the "written agreement" requirement of section 302(c). *Central States v. Kraftco, Inc.,* 799 F.2d 1098, 1111 n. 16 (6th Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987); *Bricklayers Local 15 v. Stuart Plastering Co.,* 512 F.2d at 1017.

In the leading modern statement of the rule of section 302(c)(5)(B), the Court in *Moglia v. Geoghegan,* 403 F.2d 110 (2d Cir.1968), *cert. denied,* 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969), found that without a signature, a "written agreement" under section 302(c) did not exist, and an employer was not bound to continue making wage and pension contributions in accordance with an unsigned agreement even after it had made them for a time. *id.* at 118.

The Appellants rely heavily upon *Doyle v. Shortman,* 311 F.Supp. 187 (S.D.N.Y. 1970), in which the Court bound an employer to make pension contributions where the employer had signed only its pension contribution remittance reports. In the instant case, as in *Doyle,* an employer representative signed certain remittance reports.

However, the CBA in *Doyle* provided that "adoption of the Plan is indicated by timely filing of remittance reports." *Id.* at 192. The CBA before this Court expressly provided that its adoption was to occur only through the signing of a "Letter of Assent." Furthermore, an arbitrator in *Doyle* found that the employer was bound by any agreements which its employer association had negotiated. Although Rost

---

**3.** Affidavit of Jack Parkey, IBEW Local 183 business manager, March 23, 1987 (J/A 178–79).

**4.** Appellants' response to motion to dismiss at 1 (J/A 160).

**5.** Order of June 1, 1987, at 3–4 (J/A 185–86).

was a member of the Central Kentucky Chapter of NECA, the affidavit of Richard E. Rost[6] attests that the company never intended to assign its collective bargaining rights to that chapter or to NECA. Moreover, there is no evidence that it was required to do so as a condition of NECA membership.[7]

The Appellants also cite *Denver Metro Ass'n v. Plumbers*, 586 F.2d 1367 (10th Cir.1978), and *Hinson v. NLRB*, 428 F.2d 133 (8th Cir.1970). Those cases involved signed collective bargaining agreements, which were held to have been extended beyond their nominal expiration dates by the conduct of employers. Unlike the employers in *Denver Metro* and *Hinson*, the employer in the instant case never signed a CBA at any time.[8]

*NLRB v. Haberman Construction Co.*, 641 F.2d 351 (5th Cir.1981), held that an employer was bound to a CBA by its conduct in paying union-scale wages, making the pension contributions which were specified in the CBA, and allowing a union steward to be present on the job site. But the *Haberman* holding rested upon an interpretation of section 8(a) of the Labor Act, not section 302(c). Neither *Haberman* nor *Rabouin v. NLRB*, 195 F.2d 906 (2d Cir. 1952) (section 8(d) of the Act does not require a CBA to be formally attested by the parties in order to be effective), had the occasion to construe the express signature requirement of section 302(c)(5)(B) with respect to employer contributions to labor organizations.[9]

Two recent decisions of our neighbor Circuit also merit consideration. In *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370 (7th Cir.1985), the Court held that in deciding whether an employer was bound by the pension provisions of a CBA, a reviewing court must examine an employer's conduct (including, but not limited to, written assent) for evidence of an intent to be bound.

In *Gariup*, an employer had been sent two "Letters of Assent" to sign, each of which dealt with a different employee benefit fund, and an "Acceptance of Working Agreement" form. The employer signed the assent letters but not the acceptance form.[10] After paying wages and pension contributions under the CBA for a period of time, the employer discontinued the pension payments. On appeal after a full trial, the Court concluded that the employer should be bound by the terms of the CBA on the basis of its course of conduct as well as its recorded signature.

Similarly, in *Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir.1988), the Seventh Circuit Court of Appeals upheld a grant of summary judgment for certain pension trust funds where an employer had executed a written promise to sign a CBA although that promise was never carried out. The Court considered evidence of the employer's conduct as well as its written assent to the CBA. However, inasmuch as the employer's promise was in writing, the Court found no need to address the "written agreement" requirement of section 302(c)(5)(B).

In deciding whether an employer was bound by the pension provisions of a CBA, *Gariup* and *Lynch* considered evidence of the employers' signed assent as well as evidence of employer conduct which was consistent with that assent. Neither factor alone was dispositive in either case. *Moglia* held a signature of assent to be an

---

6. Affidavit of Richard E. Rost, n. 2 *supra*.

7. The Appellants do not contend, and the record on appeal does not suggest, that mere membership in NECA or in its Central Kentucky Chapter binds a member employer to sign a CBA which the Chapter negotiates with IBEW Local 183. *See* Defendant's Response No. 7 to Plaintiffs' Requests for Admission (J/A 158).

   The CBA states that it "shall apply to *all firms* who sign a *Letter of Assent* to be bound by this Agreement," and that "[t]he term 'Employer' shall mean an individual firm who has been

recognized by an assent to this Agreement." Agreement at 1 (J/A 122) (emphasis in original).

8. *Cf. Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir.1988), discussed *infra*.

9. *See also Lynch*, 836 F.2d at 332.

10. An employer representative did insert the employer's Internal Revenue Service identification number on the "Acceptance of Working Agreement" form.

indispensable element of a "written agreement" under section 302(c)(5)(B).

It is undisputed that no signatures of assent were recorded in the case at bar. Thus, given the clear import of the statute and the tenor of the cases which have interpreted it, this Court declines to hold that an employer which never signed its assent to a CBA is bound to make pension contributions in accordance therewith merely because it did so voluntarily for a time.

This Court is aware that a literal construction of section 302(c)(5)(B) effectively forces pension funds, which are third-party beneficiaries of labor agreements,[11] to be more vigilant as to the formalities of execution than are the parties to those agreements. However, what disparity may exist in this regard derives from the express and unmistakable terms of Congress' mandate.[12]

Furthermore, this Court is convinced that the instant record sets forth no evidence of assent under the CBA, in which the signature requirement is, if anything, more explicit than that of the statute. Thus, the facts of this case would compel the result reached even if section 302(c)(5)(B) contained no express signature requirement.[13]

Perhaps, if neither section 302(c)(5)(B) nor the CBA in this case required actual signatures, various legal or equitable doctrines could be invoked to bind employers in situations like the present one. However, both the statute and the CBA so require, and this Court cannot ignore their firm commands.

It is unfortunate that neither the union nor the Appellants in the instant case apparently understood the need for a signature in order to bind Rost to the CBA. However, "the proper remedy for such a regrettable situation is not the enforcement of a claimant's rights under the trust because that would allow evasion of a carefully drafted statute," *Moglia v. Geoghegan*, 403 F.2d at 119, and moreover would vitiate an express provision in the underlying contract in this case.

For the foregoing reasons, the judgment of the district court is affirmed.

---

11. A pension trust has the right of a third-party beneficiary of the collective bargaining agreement. *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987).

12. Besides the prevention of fraud, the goals of section 302(c)(5)(B) include uniformity and the avoidance of misunderstandings, as the court well understood in *Kemmis v. McGoldrick*, 706 F.2d 993, 996 (9th Cir.1983). In *Kemmis*, the Court considered a signed written agreement which had been modified orally in the individual case of an employee who split his work between employers. The trial court was held to have erred in applying those oral modifications

to interpret the disputed language in the agreement. In the view of the *Kemmis* Court, judicial recognition of oral agreements between employers and unions regarding the meaning of written trust agreements "invites collusion and controversy to the detriment of the employee beneficiaries." *Id.*

13. This holding is not intended to make it improper for a district court to consider evidence of an employer's intent in "written agreement" cases under section 302(c)(5)(B). Because the trial court considered such evidence, to wit, the Rost affidavit, we treat its decision as a summary judgment for Rost rather than a dismissal. Fed.R.Civ.P. 12(b), 56(b), (c).