ten per cent (10%) per annum from August 31, 1988 to the date of judgment.

## PIPEFITTERS LOCAL UNION NO. 562, et al., Plaintiffs,

v.

## BEST BET WELDING AND FABRICATION, INC., Defendant.

No. 89–2136–C(4).

United States District Court, E.D. Missouri, E.D.

June 17, 1991.

Ronald C. Gladney, Robert J. Thomeczek, Bartley, Goffstein, Bollato & Lange, St. Louis, Mo., for plaintiffs.

Terry L. Potter, Fred A. Ricks, Jr., McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, Mo., for defendant.

## MEMORANDUM

CAHILL, District Judge.

This matter comes before the Court for a decision on the merits after being tried to the Court on the sole issue of liability.

Plaintiff Pipefitters Local Union No. 562 is a labor organization and represents individuals employed in the pipefitting industry and related activities. The plaintiff alleges in this case that defendant and the Union were parties to a collective bargaining agreement effective at all times pertinent hereto, covering wages, hours, health and welfare benefits, pension, vacation, apprenticeship funds, dues checkoff, and other terms and conditions of employment. Plaintiff also asserts that defendant has consistently failed to make proper contributions, failed to file reports, failed to pay appropriate rates of pay to pipefitters and apprentices, failed to consent to auditing, and as a result, were delinquent in payments to plaintiff funds.

The defendant has denied that it was under any obligation nor was it a party bound by any collective bargaining agreement.

The Court having considered the pleadings, testimony of the witnesses, exhibits, and applicable law, hereby makes the following findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such, and any conclusion of law applicable as a finding of fact is adopted as such.

*Findings of Fact.*

1. Plaintiff Pipefitters Local Union No. 562, an affiliate of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (hereinafter referred to as "Union"), is an unincorporated association representing individuals employed in the pipefitting industry and related activities, and is a labor organization as defined in Section 2(5) of the Labor Management Relations Act, 29 U.S.C. § 151 *et seq.*, and was and is, at all times material hereto, the collective bargaining representative of union employees.

2. Plaintiff Funds are employee benefit plans established pursuant to 29 U.S.C. § 1002(3), collective bargaining agreements and written trust agreements.

3. Plaintiff Trustees are trustees of the funds referred to in paragraph 2 above.

4. Defendant Best Bet Welding and Fabricating, Inc. (hereinafter referred to as Defendant), is a Missouri corporation in good standing, incorporated in June of 1986, and authorized to transact business within the state of Missouri and located within this judicial district, with principal offices in Louisiana, Missouri.

5. Defendant is a small contractor which performs mechanical fabrication and serves as a general contractor for construction projects in and around the northeast Missouri area.

6. The contract in issue is a collective bargaining agreement covering wages, hours, health and welfare benefits, pension, vacation, apprenticeship funds, dues checkoff, and other terms and conditions of employment.

7. Article 14 of the aforementioned agreement provides that contributions to the Pipefitters' Welfare Education Fund on behalf of employees will be made by contract employers monthly for hours of bargaining unit work performed the previous month and that the total number of hours worked by an employee shall be reported to the funds and the fund trustees may demand an audit for verification.

8. Article 15 of the collective bargaining agreement provides that contributions to the Pipefitters' Pension Fund on behalf of employees will be made by defendant employers monthly for hours of bargaining unit work performed the previous month, and that the total number of hours worked by an employee shall be reported to the funds and the fund trustees may demand an audit for verification. Amounts to be remitted for journeymen hours to the Pension Fund shall be determined and apportioned from amounts remitted to the Welfare Education Fund.

9. Barbara E. Tullock is the owner, president, and sole shareholder of defendant Best Bet Welding and Fabrication, Inc.

10. Carl Tullock is the husband of Barbara E. Tullock and had been a member of Local 317 for four years as a pipefitter prior to 1986.

11. Edward K. Ramshaw is employed by Pipefitters' Local 562 and has been a business representative for seven years.

12. Don Devitt was at all pertinent times a trustee of the Pipefitters' Welfare Educational Fund and Pipefitters' Pension Fund.

13. In approximately August, 1986, Mr. Carl Tullock telephoned Mr. Edward Ramshaw requesting a worker for his wife's business.

14. Paul G. Walker, a pipefitter, was sent to Best Bet Welding and Fabrication as a result of this phone call.

15. Edward Ramshaw's first meeting with Mr. Tullock was in the summer of 1986 outside of a restaurant where they discussed aspects of the Tullock business and the unions.

16. Mr. Tullock told Mr. Ramshaw that he wanted to go into business and wanted himself and a Mr. Richard Lair to work for the business as journeymen to get the job going.

17. Mr. Tullock further inquired at the above-mentioned meeting as to the impact on his (Mr. Tullock's) Local 317 membership if he worked for his wife, Barbara E. Tullock.

18. Mr. Tullock told Mr. Ramshaw that there had not been much work for him from the union.

19. Mr. and Mrs. Tullock requested from Mr. Ramshaw advice on whether Richard G. Laird, Local 562, and David Linden, Local 317, could work for the Tullock business. Defendants were informed that they could use Mr. Laird but not Mr. Linden.

20. The Tullocks met with Mr. Ramshaw at his office in Macon, Missouri, to discuss entering into a contractual agreement.

21. A collective bargaining agreement was subsequently given to the Tullocks at the above-mentioned meeting and they stated that they would have to discuss this with their attorney in Troy, Missouri.

22. The Tullocks were also provided with information concerning the periodic contribution requirements to Pipefitters and Plumbers Local No. 562 Fringe Benefit Funds and information concerning a bond to secure such payments.

23. At the time the collective bargaining agreement was given to the Tullocks, the union was in the process of negotiating a current contract; however, the current contract was never sent to the Tullocks.

24. Various conversations ensued between Mr. Ramshaw and the Tullocks regarding the "contract" and requirements of a bond.

25. There is no apparent signed collective bargaining agreement between plaintiff and defendant.

26. The Tullocks never signed any agreement given or sent to them.

27. Mr. Ramshaw set up a meeting with the Business Manager in St. Louis.

28. John Marshall was the Taft–Hartley Trust Fund officer.

29. The Tullocks met with John Marshall's office regarding the bonding requirements, which were explained by Mr. Marshall's secretary.

30. Bond documents were signed on July 28, 1986, and submitted in August, 1986.

31. Meetings were also held with Don Devitt, Mr. and Mrs. Tullock, and Edward Ramshaw.

32. Local 562 has a referral list of employees.

33. Occasionally, non-union contractors are given a referral from the list.

34. Mr. Ramshaw, thinking the Tullocks were union members, gave them a name from the list to use in their business.

35. When Mr. Ramshaw learned that the defendants were "hiring people off the street," he went to the Tullocks' office advising that they were in breach of the agreement.

36. In approximately July, 1989, Mrs. Barbara Tullock told Mr. Ramshaw that she did not sign any agreement and, therefore, she was not under union contract.

37. Mr. Ramshaw admitted that he never followed up on the Tullock contract.

38. On forms requiring reports from union employers, Mrs. Tullock wrote apologies for not complying with the reporting requirements.

39. The bond signed by Mrs. Tullock in July, 1986, was canceled on March 25, 1987.

40. A form letter was sent to potential customers by defendants which did not "hold out" that Best Bet was a union contractor.

41. No evidence was submitted that Mrs. Tullock used any Local 562 members other than Mr. Laird.

42. Defendant Best Bet made contribution payments to the funds on three occasions after 1986, August 1986, February 1987, and March 1987.

### Conclusions of Law.

This Court has jurisdiction under Section 301 of the Labor Management Relations Act, 1947, as amended, 29 U.S.C. § 185, *et seq.*, and the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.*

The National Labor Relations Act, § 302(c)(5)(B), as amended, 29 U.S.C. § 186(c)(5)(B), requires a written agree-

ment to underlie any employer obligation to make contributions into an employee trust fund.[1] In this case, there was in fact a written agreement; however it was unsigned. The terms of the agreement itself expressly state that a signature was necessary in order for an acceptance or adoption of the agreement. In other words, according to the agreement, there must have been an "execution" of the agreement. The following is the pertinent clause of the agreement:

> This agreement is made and entered into by the aforesaid association of employers as the 'negotiating agent' for and on behalf of the employer members of said association who accept, adopt, and for themselves individually ratify, approve and *sign* this agreement, or a facsimile thereof.

> This agreement is applicable to both those employers who are members of said association and who *execute* this agreement and other employers who are not association members but who, nevertheless, *execute* this agreement. In the case of employers who are not association members, this agreement shall be effective as to them on the date they *execute* this agreement. (Emphasis added.)

The plaintiff argued that the defendant's course of conduct and the contributions made to the trust fund demonstrated its mutual assent to the collective bargaining agreement. Plaintiff's argument that an enforceable written agreement is evidenced by the Pipefitters Welfare Educational Fund and Pension Fund summary sheet and remittance forms has no supporting authority. In the instant case, defendant's action in submitting contributions and remitting forms to the union could have been construed as assenting to the terms of the contract provided certain circumstances were present. *See Doyle v. Shortman,* 311 F.Supp. 187 (S.D.N.Y.1970) (court bound an employer to make pension contributions where the employer had signed only its pension contribution remittance reports).

However, in *Doyle,* the union's collective bargaining agreement provided that adoption of the contract was demonstrated by the filing of contribution reports. *Id.* at 192. There is no such clause in the instant case. In fact, a signed agreement is required by the terms of the collective bargaining agreement in order to have a valid contract.

Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c), restricts the circumstances under which an employer may contribute monies to employee groups. In general, such contributions are unlawful; however, this general prohibition on contributions,

> "shall *not* be applicable ... (5) with respect to money or other things of value paid to a trust fund established by such [employee] representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents ... [p]rovided, [t]hat ... (B) the *detailed* basis on which such payments are to be made is specified in a *written agreement* with the employer...." 29 U.S.C. § 186(c). (Emphasis added.)

The Court held in a leading case on § 302(c)(5)(B), *Moglia v. Geoghegan,* 403 F.2d 110 (2d Cir.1962), *cert. denied,* 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969), that "... where employer and union had never executed written collective bargaining agreement and employer had never executed written trust agreement for union's pension trust, payment ... was prohibited...." *Moglia* at 110. Therefore, if employees had made claims under the collective bargaining agreement, any payments would have been prohibited as there would have been no recognized agreement between the employer and the union. Furthermore, the Court held that without a signature, a "written agreement" under § 302(c) did not exist, and an employer was not bound to continue making wage and pension contributions in accordance with an unsigned agreement even after it had made them for a time. *Id.* at 118. In *Merrimen*

---

**1.** "... the detailed basis on which such payments are to be made is specified in a written agreement with the employer and employees...." 29 U.S.C. § 186(c)(5)(B).

*v. Paul F. Rost Elec., Inc.*, 861 F.2d 135 (6th Cir.1988), the Court refused to hold that an employer which never signed its assent to a collective bargaining agreement is bound to make pension contributions in accordance therewith merely because it did so voluntarily for a time. *Id.* at 139.

The Court is persuaded by the ruling in *Merrimen* as it mirrors the instant case. There is a lack of a signed writing as well as lack of conduct on the part of this defendant which would prove assent to the terms and conditions of the agreement. A shop stewart was never appointed, the bond was allowed to expire in 1987, defendant did not use the union's hiring hall, and a new contract was never negotiated. It cannot be ruled in this instance that defendant intended to be bound by an agreement where its conduct displayed otherwise.

Accordingly, under both the statute § 302(c)(5)(B) and the collective bargaining agreement, there is no legally binding contract unless signed by both the parties.

The Court now enters judgment against the plaintiffs and in favor of the defendant in accordance with this order.

SO ORDERED.