947 F.2d 946
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the
PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND
CANADA, LOCAL UNION 816, INSURANCE, PENSION AND INDUSTRY
FUNDS, Plaintiffs-Appellees
v.
HERB PHILLIPS PLUMBING & HEATING OF BAY CITY, INC.,
Defendants-Appellants.
 No. 91-1216.
 United States Court of Appeals, Sixth Circuit.
 Nov. 4, 1991.
 
 Before KENNEDY and DAVID A. NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The Taft-Hartley Act makes it unlawful for an employer to pay money to a labor organization unless, among other things, the money is paid to an employee benefit trust fund and "the detailed basis on which such payments are to be made is specified in a written agreement with the employer...." 29 U.S.C. §§ 186(a) and 186(c)(5)(B).
 
 
 2
 The issue presented in this appeal is whether the statute can be satisfied by a written collective bargaining agreement signed on behalf of a construction industry employer by a contractors association which, although authorized to take such action for the employer, is not shown to have been authorized in writing. Holding that the collective bargaining agreement satisfied the statute, the district court entered a judgment requiring the employer to make the contributions that were called for by the agreement. We agree with district court's holding, and we shall affirm the judgment.
 
 
 3
 * The plaintiffs are labor union trust funds designated to receive employer contributions under a written collective bargaining agreement between a union and a contractors association. The defendant, Herb Phillips Plumbing & Heating of Bay City, Inc., was a member of the association. The company failed to make contributions for two of its employees, Clayton and Michael Norgan, and the trust funds brought suit to recover the amounts claimed to be due.
 
 
 4
 The collective bargaining agreement was negotiated by the contractors association on behalf of its members in the spring of 1986. At a meeting held on April 23, 1986, the members of the association ratified the agreement and authorized the association's president to sign it. This meeting was attended by the president of the defendant company.
 
 
 5
 Attached to the collective bargaining agreement were assent forms designed for signature by individual employers. The defendant company never signed an assent form. The uncontested affidavits of the president of the union and the president of the contractors association show that it was their understanding that the assent forms were provided for employers that were not members of the association. Association members were not expected to sign assent forms.
 
 
 6
 Defendant Herb Phillips Plumbing honored the collective bargaining agreement for a short time after it was signed, but on July 1, 1986, Phillips stopped making trust fund payments for employee Clayton Norgan. Phillips never made contributions for Michael Norgan, who was employed by the company from May of 1987 to July of 1988. The parties stipulated that the unpaid trust fund contributions came to $34,299.18.
 
 
 7
 The trust funds brought suit against Phillips in January of 1990. Phillips moved for summary judgment, contending that under 29 U.S.C. § 186 the trust fund contribution provisions of the collective bargaining agreement would be binding on it only if it had signed the agreement itself or had given the contractors association written authorization to do so on its behalf. The trust funds filed a cross-motion for summary judgment. The district court denied Phillips' motion, granted the trust funds' motion, and entered judgment in the amount of the unpaid contributions plus interest, costs, and attorney fees. This appeal followed.
 
 II
 
 8
 Section 302 of the Taft-Hartley Act, 29 U.S.C. § 186, makes it unlawful for an employer or employer association to pay or agree to pay money or any other thing of value to any representative of the employer's employees. An exception to the general prohibition is found in § 302(c), which provides, in pertinent part, as follows:
 
 
 9
 "The provisions of this section shall not be applicable ... (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents ...: Provided, That ... (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer...."
 
 
 10
 Phillips reads Merrimen v. Paul F. Rost Elec., Inc., 861 F.2d 135 (6th Cir.1988), as holding that under § 302 an employer cannot be bound by the trust fund contribution provisions of a collective bargaining agreement unless the employer itself has put its signature to a written instrument indicating an intent to be so bound. This is too broad a reading of Merrimen.
 
 
 11
 Like defendant Phillips, the defendant in Merrimen, Rost Electric, was a member of a multi-employer bargaining association. The association negotiated a collective bargaining agreement that expressly required individual employers to sign a letter of assent if they were to be bound by the agreement. Rost Electric never signed such a letter. A vice president of the company swore that Rost Electric never intended to assign its collective bargaining rights to the association, and there was no evidence that it was required to do so as a condition of association membership. Id. at 138. Although Rost Electric complied with the collective bargaining agreement for a year, we held that this was not enough to make the trust fund provisions of the agreement binding on the company.
 
 
 12
 The case at bar presents a quite different situation. Here the collective bargaining agreement does not provide that individual employers who are members of the contractors association must sign letters of assent in order to be bound, and here the association's president was authorized to execute the agreement for and on behalf of the individual employers who were members of the association. Under these circumstances, it seems to us, the requirement of "a written agreement with the employer" was satisfied when the association entered into a written agreement on behalf of its members.
 
 
 13
 Relying upon Moglia v. Geoghegan, 403 F.2d 110 (2d Cir.1968), cert. denied, 394 U.S. 919 (1969), Merrimen interpreted the "written agreement" requirement of § 302(c)(5)(B) as including a "signature" requirement. That requirement, too, has been satisfied here. The collective bargaining agreement was signed by the association's president as defendant Phillips' agent. Phillips concedes that the provisions of the agreement not pertaining to trust fund contributions are enforceable against it by virtue of the president's signature. If the president of the contractor's association had authority to sign the agreement for Phillips, he had authority to sign the entire agreement for Phillips; we have no reason to believe that his authority stopped when the trust fund provisions were reached.
 
 
 14
 It is hornbook law that an agent can bind a principal to a written contract--even where the contract itself must be in writing--whether or not the agent's authorization to do so is itself in writing. Restatement (Second) of Agency § 30. Courts are not free, in cases of this kind, "to ignore ... any coherent principles of agency law...." O'Hare v. General Marine Transport Corp., 740 F.2d 160, 168 (2d Cir.1984), cert. denied, 469 U.S. 1212 (1985). Under general agency law principles, one who signs an agreement through an agent (and a corporation can act only through agents, of course) is normally considered to sign the agreement himself. "Qui facit per alium facit per se," as the ancient maxim puts it.
 
 
 15
 Section 302(c)(5)(B) does not say that an employer's agent needs written authorization to sign contracts for the employer. The purpose of § 302 is simply "to insure that employer contributions are only for a proper purpose and to insure that the benefits from the established fund reach only the proper parties." Moglia v. Geoghegan, 403 F.2d at 116. This purpose hardly suggests that we can or should impose a non-statutory requirement with respect to the form of the agent's authority. The written collective bargaining agreement signed by the association as Phillips' agent clearly satisfied the "written agreement" requirement of § 302(c)(5)(B), and the collective bargaining agreement was clearly sufficient to satisfy the anti-fraud purposes of § 302.
 
 
 16
 AFFIRMED.
 
 
 17
 CONTIE, Senior Circuit Judge, dissenting.
 
 
 18
 I respectfully dissent from the majority's opinion. Section 302 of the Taft-Hartley Act, 29 U.S.C. § 186(c), as interpreted by this court in Merrimen v. Paul F. Rost Elec., Inc., 861 F.2d 135 (6th Cir.1988) requires that an employer sign a written instrument before it can be bound by the pension provisions of a collective bargaining agreement. Because the appellee did not execute a signed writing, it cannot be bound by the pension provisions in the present case. Simply because the bargaining association executed the agreement on behalf of the employer is not sufficient to bind the employer. Although such principles of agency may bind it to other provisions of the collective bargaining agreement, § 186(c) was meant to protect the employer by requiring something more.