**TRUSTEES OF THE HOTEL INDUSTRY PENSION FUND and Trustees of the South Florida Hotel and Culinary Employees Welfare Fund, Plaintiffs,**

v.

**CAROL MANAGEMENT CORPORATION, a foreign corporation d/b/a Doral Resort and Country Club, and Resort and Country Club Management Corp. d/b/a Doral Resort and Country Club, and KSL Recreation Corporation, a foreign corporation d/b/a Doral Resort and Country Club, Defendants.**

No. 94–0587–CIV.

United States District Court, S.D. Florida.

March 27, 1995.

Kathleen M. Phillips, Kaplan & Bloom, P.A., Coral Gables, FL, for plaintiff.

Kimberly Gilmour, Ft. Lauderdale, FL, for defendant Carol Management, Inc. and Resort and Country Club Management Corp. d/b/a Doral Resort and Country Club.

John Edward Alley, David S. Shankman, Tampa, FL, for defendant KSL Recreation Corp. d/b/a Doral Resort and Country Club.

Michael Pepperman, Stokes & Murphy, Atlanta, GA, for defendant Carol Management, Inc. and Resort and Country Club Management Corp. d/b/a Doral Resort and Country Club.

### ORDER DENYING DEFENDANTS CAROL MANAGEMENT CORPORATION AND RESORT & COUNTRY CLUB MANAGEMENT CORPORATION'S MOTION TO DISMISS AMENDED COMPLAINT AND DENYING DEFENDANT KSL RECREATION CORPORATION'S MOTION TO DISMISS AMENDED COMPLAINT

MARCUS, District Judge.

THIS CAUSE comes before the Court upon Defendants Carol Management Corporation ("Carol Management") and Resort & Country Club Management's ("Resort's") motion to dismiss amended complaint, filed July 5, 1994, and Defendant KSL Recreation Corporation's ("KSL's") motion to dismiss amended complaint, filed August 8, 1994. Upon Orders of Reference from this Court, United States Magistrate Judge Stephen T. Brown issued a Report and Recommendation on December 29, 1994, recommending that Defendants Carol Management and Resort's motion be denied, and a second Report and Recommendation on January 19, 1995, recommending that Defendant KSL's motion be denied. Carol Management and Resort filed timely objections to the December 29, 1994, Report and Recommendation. No objections to the January 19, 1995, Report and Recommendation were filed. Upon a thorough review of the pleadings, and for the reasons detailed at some length below, Defendants Carol Management and Resort's motion to dismiss amended complaint is DENIED. In addition, no objections having been filed, Magistrate Judge Brown's January 19, 1995, Report and Recommendation is ADOPTED, and Defendant KSL's motion to dismiss amended complaint is DENIED.

### I.

This action arises out of the collective bargaining relationship established between Local 355 of the Hotel Employees and Restaurant Employees Union (the "Union") and the Defendants, Carol Management, Resort, and KSL, each of which has, in turn, owned and/or managed the Doral Resort and Country Club (the "Hotel"). Carol Management and the Union have an extended collective bargaining relationship, having been parties to several collective bargaining agreements and other contracts regarding the terms and conditions of employment at the Hotel, dating back to 1977. Am.Compl. ¶ 5.[1] Under these collective bargaining agreements, Carol Management agreed to make contributions to two employee benefit plans governed by ERISA—the Hotel Industry Pension Fund and the South Florida Hotel and Culinary Employees Welfare Fund (collectively, the "Trust Funds" or the "Funds")—and to abide by the terms of the benefit plans and the

---

1. The facts set out in this Order are taken entirely from the Plaintiff's First Amended Complaint, filed June 21, 1994. For purposes of a motion to dismiss under Rule 12(b)(6), the facts as stated in the complaint are taken as true. *See SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.), *reh'g denied*, 840 F.2d 25, *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988).

trust documents governing the Trust Funds. *Id.* ¶ 6. The most recent collective bargaining agreement between Carol Management and the Union expired on June 30, 1988. *Id.* ¶ 7.

In negotiating for a replacement to that most recent collective bargaining agreement, the parties were unable to agree and reached an impasse in their bargaining. At that point, however, "the parties continued their collective bargaining relationship by accepting and adhering to the terms of Carol Management's last proposed collective bargaining agreement, dated September 28, 1998" (the "1988 Agreement"). *Id.* The 1988 Agreement, like those before it, required Carol Management's continued contributions to the Trust Funds for the benefit of Hotel employees. *Id.* ¶ 8. The Union and Carol Management followed the terms of the 1988 Agreement for approximately four years, including the arbitration of employee grievances in accordance with the terms of the agreement. *Id.* ¶ 9.

Before the 1988 Agreement expired, the parties began negotiations for a new contract. Once again, however, the Union and Carol Management could not agree, and an impasse in the bargaining was reached. *Id.* ¶ 10. As in 1988, neither strike nor lockout followed this deadlock. Both sides adopted the terms of Carol Management's last written proposal (the "1993 Agreement") and followed its terms with respect to pay rates, hours of work, job classifications, seniority, and grievance procedures, among other terms and conditions of employment included in the contract. *Id.* The 1993 Agreement also obligated Carol Management to continue its contributions to the Trust Funds on behalf of the Hotel employees. *Id.* ¶ 11. In addition, Carol Management was required under the 1993 Agreement to allow an audit of its records by the Trust Funds for the purpose of determining the amounts owed to them. *Id.* ¶ 13.

Thereafter, on a date uncertain, Defendant Resort became a "successor employer" to Carol Management. As such, Resort was notified of Carol Management's obligations under the 1993 Agreement. In addition, there "has been a substantial continuity in the work force and operations of the Hotel since [Resort] assumed control." *Id.* ¶ 16. A few months after Resort took over the Hotel, however, KSL assumed ownership and management of the Hotel. Like Resort before it, KSL was notified of the obligations under the 1993 Agreement, and "there has been a substantial continuity in the work force and operations of the Hotel since [KSL] assumed management control." *Id.* ¶ 18.

The Plaintiffs, Trustees of the Trust Funds, bring this action on behalf of the Funds to recover payments allegedly owed by the Defendants. In addition, the Plaintiffs seek an audit of each Defendant's records to determine the precise amounts owed. Defendants Carol Management and Resort moved to dismiss the amended complaint, arguing that the requested contributions to the Trust Funds are prohibited under section 302(a) of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 186(a). Mem. Law Supp.Mot.Dismiss Am.Compl. at 2. Carol Management and Resort further assert that the Plaintiffs, by accepting payments from the Defendants, are estopped from contesting the amounts and manner in which those payments were made. *Id.* at 5.

## II.

The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of claim for relief. It is read alongside Fed.R.Civ.P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 at 590–92 (1969) (Wright & Miller). Moreover, for the purposes of the motion to dismiss, the complaint must be construed in a light most favorable to the plaintiffs and the factual allegations taken as true. *See SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.), *reh'g denied,* 840 F.2d 25, *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988).

**1552**

■ The Eleventh Circuit has recently written:

> [T]he Supreme Court has stated that the "accepted rule" for appraising the sufficiency of a complaint is "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99 [102], 2 L.Ed.2d 80 (1957); *Tiftarea Shopper, Inc. v. Georgia Shopper, Inc.*, 786 F.2d 1115, 1117–18 (11th Cir.1986) (quoting *Conley* ).

*Id.* A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory. *Robertson v. Johnston*, 376 F.2d 43 (5th Cir.1967).[2] We hasten to add that this motion is viewed with disfavor and rarely granted. *See e.g., Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir.1969); *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir.1968) ("Dismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate."). The pleadings must show, in short, that the Plaintiffs have no claim before the 12(b)(6) motion may be granted. It is against this standard that we consider the Defendants'[3] motion to dismiss.

### III.

In support of their motion to dismiss the amended complaint, the Defendants first assert that the contributions to the Trust Funds which the Plaintiffs now seek are prohibited under section 302(a) of the LMRA, 29 U.S.C. § 186(a). Mem.Law Supp.Mot.Dismiss Am.Compl. at 2. The Plaintiffs allege that the Trust Funds fall within the section 302(c)(5) exception to the general prohibition against such payments. The Defendants, however, argue that the Funds do not satisfy the "written agreement" requirement in section 302(c)(5)(B).

Section 302, entitled "Restrictions on financial transactions," proscribes payments by employers to labor organizations, employee representatives, or other similar parties, except in limited circumstances. 29 U.S.C. § 186(a). The relevant exception in this case is contained in section 302(c)(5), which states:

> The provisions of this section shall not be applicable ... (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided,* That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the

---

2. In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

3. For ease of reference, we will refer to Defendants Carol Management and Resort as the Defendants.

district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities....

29 U.S.C. § 186(c)(5). The purpose of this provision was explained by the Supreme Court in *Arroyo v. United States,* 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959):

> Those members of Congress who supported the amendment [adding these provisions] were concerned with corruption of collective bargaining through bribery of employee representatives by employers, with extortion by employee representatives, and with the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control....
>
> Congress believed that if welfare funds were established which did not define with specificity the benefits payable thereunder, a substantial danger existed that such funds might be employed to perpetuate control of union officers, for political purposes, or even for personal gain. To remove these dangers, specific standards were established to assure that welfare funds would be established only for purposes which Congress considered proper and expended only for the purposes for which they were established.

*Id.* at 426, 79 S.Ct. at 868–69 (citations and footnotes omitted).

The issue presented, in essence, is whether the original, signed collective bargaining agreements, the last of which expired on June 30, 1988, along with the unsigned 1988 and 1993 Agreements, as well as whatever documents may evidence the Defendants' agreement to "abide by the terms of the Plan

Documents and the Declarations of Trust which govern operation of the Plaintiff Trust Funds," 1st Am.Compl. ¶ 6, and the trust documents themselves satisfy the requirement in section 302(c)(5)(B) of a "written agreement."

The Eleventh Circuit has not spoken directly on the use of unsigned collective bargaining agreements to satisfy the requirements of section 302(c)(5). The general rule regarding such unsigned agreements, however, was stated by the Eleventh Circuit in *United Paperworkers Int'l Union v. International Paper Co.,* 920 F.2d 852 (11th Cir. 1991). In that case the union and employer had an extensive collective bargaining history, including numerous signed and implemented collective bargaining agreements. In negotiating for a new agreement, however, the parties reached impasse. At that point, the employees did not strike, and the employer did not lock out the employees. Instead, the employer unilaterally implemented its "final offer" as a temporary measure until an agreement could be reached. However, approximately three weeks later, the employer informed the union that if an agreement was not ratified by a date certain, then the employer intended to replace all union employees until an agreement was reached. When no agreement was reached, the lockout was implemented. The union then filed grievances and sought arbitration claiming that under the terms of the expired, signed agreement, as implemented in the employer's unsigned "final offer," the company owed the laid-off employees severance pay for their terminations due to the lockout. The employer refused to arbitrate, responding that the agreement had terminated and that, therefore, it was not required to arbitrate the dispute.

■ The Circuit Court held that under these circumstances, the "final offer," although not formally ratified by the union, constituted a binding contract under which the employer was required to arbitrate the grievances. "By implementing [its final offer], the Company was in effect stating the conditions of employment under which the Union's members would work, should they choose to do so, until a long-term agreement

was reached." *Id.* at 856. By continuing to work, conversely, the union and employees accepted the employer's "final offer" as the terms of work until a formal agreement was signed. *Id.* at 857–59. Thus, the existence of a labor agreement may be found from the circumstances of the parties' relationship without a signed contract. *Id.; see also N.L.R.B. v. Haberman Constr. Co.,* 641 F.2d 351, 355–56 (5th Cir. Apr. 1981) ("It is well settled that a union and employer's adoption of a labor contract is not dependent on the reduction to writing of their intention to be bound. Instead, what is required is conduct manifesting an intention to abide by the terms of an agreement.") (citations and footnote omitted).

On the other hand, section 302(c)(5)(B) plainly requires a written agreement, and this Circuit has held that the requirements of section 302 are to be strictly construed. *See Bricklayers, Masons & Plasterers Int'l Union v. Stuart Plastering Co.,* 512 F.2d 1017 (5th Cir.1975). In *Bricklayers,* the Former Fifth Circuit analyzed the standards embodied in section 302(c)(5)(B) and established a strict standard for compliance with section 302. In that case, the union sought payment into a health and welfare fund and a pension fund from the defendant employers. The collective bargaining agreement established a schedule of payments to be made to the funds by participating employers. In addition, a trust agreement for the health and welfare fund was executed by two participating employers, but not by any of the defendant employers. A trust agreement for the pension fund was also drafted, but no employer subject to the collective bargaining agreement signed the pension fund trust agreement. The defendant employers made some payments as set forth in the collective bargaining agreement, but the record showed that some of the fringe benefit monies paid to the fund administrators were misused by the administrators to satisfy personal obligations. One of the administrators, a union representative, used a portion of the money "to finance his unsuccessful campaign for re-election as Business Manager of [the union]." 512 F.2d at 1020. The diversion of funds was uncovered by the administrator's successor, who first sought to have the em-

ployers pay their contributions into an escrow account designated by the union and later attempted to suit each individual employee's desire to have payments made either to the escrow account or directly to the employee. *Id.* at 1021.

The trustees of the fringe benefit funds first brought suit against the original administrators of the funds to recover the misused monies. They then instituted a second action pursuant to LMRA section 301 alleging breach of the collective bargaining agreement by the employers' failure to make the specified payments to the funds. The employers defended on the grounds that the collective bargaining agreement and the unsigned trust agreements did not meet the requirements of section 302(c)(5) and that, therefore, making payments to the funds would subject them to potential criminal liability under section 302(d). The Circuit affirmed the District Court's finding that the documents did not meet the requirements of section 302(c)(5)(B).

First, the Court noted that 302(c)(5) places the burden of proof upon the employee representative to show that a valid trust fund has been formed and that a written agreement specifying not only the details of payment, but also the "mechanism for resolving possible disputes," "an annual audit," and "segregat[ion] from payments intended for any other proper purpose." *Id.* at 1026; *see also* 29 U.S.C. § 186(c)(5)(B)–(C). In addition, the Circuit stated that "[j]udicial adherence to the intention of Congress in enacting Section 302 requires strict enforcement of the purposefully rigid structure provided in this section." *Id.; see also Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985) (applying *Bricklayers* and stating that "strict compliance with the § 302(c) exception" is necessary "to prevent the misappropriation and dissipation of monies due the workers"). In applying these standards, the Court held that the collective bargaining agreement alone, which covered solely the schedule for and amount of payments, did not satisfy section 302(c)(5)(B). Moreover, the Circuit found that where the trust agreements were drafted *after* the collective bargaining agreement was already

signed, their terms could not be incorporated by reference into the collective bargaining agreement. 512 F.2d at 1029; *Rosen*, 766 F.2d at 485. In so holding, the Court stated:

> In short, the policies of the section, with regard to a careful delineation of trustee powers and duties, cannot be accomplished if an employer's duty to make payments arises in anticipation of the creation of a trust fund that, as here, may never be created in fact. To adopt the [union's] liberal construction of Section 302 would subvert the intent of Congress and license the loose management of fringe benefit funds. This, Congress specifically sought to prevent. It occurred here with respect to those amounts that were in fact paid into "the fund" only to be used by [the administrators] for their individual purposes.

512 F.2d at 1028. Nonetheless, the Circuit left open the possibility that a collective bargaining agreement could validly incorporate the terms of an *existing* trust agreement:

> [W]hen union and management have engaged in previous rounds of collective bargaining that have resulted in the establishment of a qualifying trust fund ... the terms of the existing trust may be incorporated by reference in the collective bargaining agreement. The same procedure may be followed in cases of initial collective bargaining ... by drafting and executing the trust agreement before the execution of the collective bargaining agreement.

*Id.* at 1028 n. 15.

The Eleventh Circuit has not specifically addressed, however, whether a signed collective bargaining agreement that has nominally expired but which continues to govern the parties' relationship—either directly or as implemented in subsequent, unsigned agreements—may be considered in determining whether the parties' agreements satisfy section 302. However, every Circuit Court of Appeals to address this issue has held that signed but expired collective bargaining agreements, or subsequent unsigned agreements containing substantially the same terms, which incorporate by reference the relevant trust documents, and which continue

to govern the parties' conduct, may be used to satisfy the requirements of section 302(c)(5)(B). *See Cuyamaca Meats, Inc. v. San Diego & Imperial Counties Butchers' & Food Employers' Pension Trust Fund,* 827 F.2d 491, 498 (9th Cir.1987) (noting the purposes of § 302 and finding that "[t]he authority in this circuit is clear: impasse in negotiations between employers and union does not prevent expired collective bargaining agreements from serving as the written agreements legitimizing subsequent pension fund contributions."), *cert. denied,* 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988); *Denver Metro. Ass'n Plumbing, Heating, Cooling Contr. v. Journeyman Plumbers & Gas Fitters Local No. 3,* 586 F.2d 1367 (10th Cir.1978) (separate trust fund agreements incorporated by reference in expired collective bargaining agreement satisfy § 302); *Hinson v. N.L.R.B.,* 428 F.2d 133 (8th Cir. 1970) (same); *see also Gariup v. Birchler Ceiling & Interior Co.,* 777 F.2d 370 (7th Cir.1985) (finding that parties entered into collective bargaining agreement by conduct and that where employer signed trust fund's "Assent to Participate" form, that form, along with other unsigned documents, satisfied the requirements of section 302(c)(5)(B)). *Cf. Merrimen v. Paul F. Rost Elec., Inc.,* 861 F.2d 135 (6th Cir.1988) (holding that § 302 requirements not met where the employer had *never* signed the collective bargaining agreement nor any other writing evidencing its intent to contribute to the trust fund in question); *Moglia v. Geoghegan,* 403 F.2d 110 (2d Cir.1968) (same), *cert. denied,* 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969).

 These cases stand for the proposition that where an employer has previously agreed to make contributions to a trust fund—through a signed collective bargaining agreement, trust agreement, other document, or some combination of documents satisfying the requirements of section 302(c)(5)—then the expiration of the collective bargaining agreement will not bar the continuation of such payments under section 302 if the parties continue to be governed by the terms of

the expired agreement with respect to the trust contributions. The reasoning behind this ruling is plain. If the original signed documentation establishes a payment plan satisfying section 302, then payments in accordance with that plan will not be subject to the abuses sought to be avoided in section 302. Where the parties continue to operate according to that same plan, despite the expiration of the signed written agreement, then those payments will similarly be protected from abuse by employee representatives.

■ The Defendants vigorously assert that under *Merrimen v. Paul F. Rost Elec., Inc.*, 861 F.2d 135 (6th Cir.1988), and *Moglia v. Geoghegan*, 403 F.2d 110 (2d Cir.1968), unsigned agreements may not be considered in any manner in determining whether section 302(c)(5) has been satisfied. In particular, the Defendants point out that the agreements in this case included detailed signature pages which were never executed by the parties. *See* Defs.' Objs.Mag.Rep. & Rec. at 2–3; Mem.Law Supp.Mot.Dismiss at 2–4; Mem.Law Reply Pltffs.' Mem.Opp.Defs.' Mot.Dismiss at 2–7. However, both *Merrimen* and *Moglia* are readily distinguishable from the facts of the present case. In *Merrimen*, trustees for certain trust funds sought contributions from an employer under a multi-employer collective bargaining agreement with the Kentucky chapter of a national union. The agreement stated that it would "'apply to all firms who sign a Letter of Assent to be bound by this Agreement.'" *Merrimen*, 861 F.2d at 136 (quoting collective bargaining agreement). The defendant employer was the general electrical contractor on a project in Kentucky and paid wages to its employees and contributed to the trust funds under the terms of the bargaining agreement for one year. After a year, however, the employer halted its payments to the trust funds. The trustees of the funds

brought suit to recover payments allegedly due after that time. The District Court dismissed the case, and the Sixth Circuit affirmed.[4] The Court distinguished *Denver Metro, supra*, and *Hinson, supra*, noting that those cases "involved signed collective bargaining agreements, which were held to have been extended beyond their nominal expiration dates by the conduct of employers." 861 F.2d at 138. The opinion went on to state that "[u]nlike the employers in *Denver Metro* and *Hinson*, the employer in the instant case *never signed a CBA [collective bargaining agreement] at any time.*" *Id.* Similarly in *Moglia*, the employer "had *never* entered into a collective bargaining agreement or a pension trust agreement with the [union] although the [union] had often requested it to do so." 403 F.2d at 114 (emphasis added). By contrast, in the present case, the complaint alleges that the employer and the union have been parties to signed written agreements in the past. *See* 1st Am.Compl. ¶ 5.[5] Therefore, these cases are not persuasive in this context. Where the parties continue to be governed by the terms of an expired collective bargaining agreement, or where the terms of that agreement are substantially incorporated into a later, unsigned agreement, then the continuing agreement may be considered among the documentation alleged to constitute the "written agreement" required by section 302(c)(5)(B).

In the present case, the complaint alleges that the parties have had an extended collective bargaining history, including having been parties to several signed collective bargaining agreements. 1st Am.Compl. ¶ 5. The Plaintiffs further state that upon expiration of the most recent agreement, the parties negotiated until impasse was reached and that, upon impasse, "the Union did not strike and Carol Management did not lock out any employees. Rather, the parties con-

---

4. In affirming the District Court's decision, however, the Sixth Circuit noted that the District Court had considered matters beyond the complaint and its attachments and, therefore, treated the decision as a grant of summary judgment for the defendant. 861 F.2d at 139 n. 13.

5. While the complaint does not explicitly state that the prior agreements were signed, when viewed in the light most favorable to the Plaintiffs, it is clear from the discussion of the 1988 and 1993 Agreements that these prior agreements were signed by the parties. *See SEC v. ESM Group, Inc.*, 835 F.2d at 272.

tinued their collective bargaining relationship by accepting and adhering to the terms of Carol Management's last proposed collective bargaining agreement, dated September 28, 1988...." *Id.* ¶ 7. A similar course of events is alleged to have taken place upon the expiration of the unsigned 1988 Agreement, culminating in the parties being governed by the 1993 Agreement. *Id.* ¶ 10. In each case, the terms regarding contributions to the Trust Funds continued without material change. *Id.* ¶¶ 8, 11. Through this course of conduct, as set forth in the complaint, the Plaintiffs could prove some set of facts under which the Defendants [6] continued to be obligated to contribute to the Trust Funds in the same manner as in the prior, signed collective bargaining agreements. Thus, under these circumstances, the 1988 and 1993 Agreements may properly be considered in determining whether the requirements of section 302(c)(5) have been met in this case.[7]

■ The issue then becomes whether these agreements and the other documents alleged to exist in the Plaintiffs' complaint and attachments satisfy the requirements of section 302(c)(5). The 1993 Agreement provides a schedule and amount of payments to be made into the Trust Funds. *See* 1st Am.Compl., Exh. 1, 1993 Agreement Arts. XXVI–XXVII. However, the Agreement plainly does not specify a dispute resolution mechanism, provisions for an annual audit, or segregation of pension funds from any payments for other purposes. *See Bricklayers,* 512 F.2d at 1026; 29 U.S.C. § 186(c)(5)(B)–

(C). Moreover, it is unclear what terms, if any, were contained in the 1988 Agreement and the prior, signed agreements. Nonetheless, the Plaintiffs' First Amended Complaint alleges the existence of these prior agreements, as well as stating that "Carol Management has also obligated itself to abide by the terms of the Plan Documents and the Declarations of Trust which govern operation of the Plaintiff Trust Funds." 1st Am. Compl. ¶ 6. These documents, and any writings evidencing Carol Management's, and, by succession, Resort's, agreement to be governed by them, are not attached to the complaint. In addition, whether the language used in the 1993 Agreement suffices to incorporate by reference the trust documents for the Trust Funds is unclear without examining the parties' intent. *See Rosen,* 766 F.2d at 485. It cannot be said, however, that the Plaintiffs can prove *no set of facts* underlying this basic pleading of the parties' agreements which would support a finding that the requirements of section 302(c)(5) were met.[8] In their motion to dismiss, the Defendants assert that they never signed a "participation agreement" evidencing their intent to contribute to the Trust Funds. Mot.Dismiss Am.Compl. at 4–5. However, on a motion to dismiss, this Court is constrained to take the facts as stated in the complaint as true and to view the complaint in the light most favorable to the Plaintiffs. *See SEC v. ESM Group, Inc.,* 835 F.2d at 272. Therefore, this argument is not persuasive. Accordingly, to the extent that Defendants Carol Management and Resort seek dismissal of the first

---

6. With respect to Defendant Resort, the Plaintiff asserts:

 16. On a date unknown to Plaintiffs with specificity, Defendant RESORT AND COUNTRY CLUB MANAGEMENT CORP.... became a successor employer to Carol Management. Resort [ ] was put on notice of Carol Management's obligations under the above Agreement, and there has been a substantial continuity in the work force and operations of the Hotel since Resort [ ] assumed control.

1st Am.Compl. ¶ 16. Defendant Resort does not make any argument separate from those made by Carol Management. Therefore, we need not address whether the successorship analysis asserted by the Plaintiff properly supports a claim against Resort.

7. In reaching this conclusion we merely accept the pleadings as stated in the complaint and find that the Plaintiffs could prove *some set of facts* in support of their claims which would allow this Court to include the 1988 and 1993 Agreements in analyzing whether section 302(c)(5) has been satisfied. We express no opinion as to whether the Plaintiffs will be able to meet their burden with record evidence as to this, or any other portion of the analysis.

8. Again, we offer no opinion as to whether the Plaintiffs will be able to substantiate their claims with record evidence.

amended complaint on the grounds that the payments sought are prohibited by section 302 of the LMRA, their motion must be and is hereby DENIED.

## IV.

The Defendants additionally seek dismissal of the complaint on an estoppel theory. They state that "[s]ince 1988 Carol, and subsequently Resort, have implemented certain employee benefit provisions and plaintiffs have accepted without complaint Carol's contributions to the funds. Plaintiffs at this point are estopped from making complaints regarding such payments." Mem.Law Supp.Mot.Dismiss Am.Compl. at 5. In support of their argument, the Defendants cite a single case, *Rosen v. Hotel & Restaurant Employees & Bartenders Union*, 637 F.2d 592 (3d Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). In that case, the plaintiff was notified by a pension fund trustee that his employer had not made certain payments to the fund. The employee then paid the contributions himself, and the trustee deposited the check in the fund. The fund later informed the plaintiff, in a letter, that his payments were up-to-date. When the plaintiff went to collect his pension, however, the fund refused to pay and returned his earlier check with interest, stating that the plan allowed for only employers to make contributions, not individual employees. The plaintiff then brought the lawsuit to recover his pension payments. The District Court granted summary judgment for the defendant fund on other grounds. The Third Circuit reversed. In their opinion, the Circuit upheld the plaintiff's estoppel argument, finding that the facts of the case represented the "extraordinary circumstances" in which estoppel could be applied in a pension case. *Id.* at 598; *see also Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir.) (allowing estoppel argument in ERISA context where representations establishing estoppel were "interpretations of the Plan, and not modifications" of the agreement), *cert. denied*, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990).

■ The only allegations in the complaint relating to this claim are as follows:

12. Defendant Carol Management has breached the 1988 and/or the 1993 Agreement by failing to make fringe benefit contributions and other payments to the Plaintiffs in the amount and manner set forth in said Agreement. The exact amounts due are unknown to Plaintiffs with specificity at this time.

1st Am.Compl. ¶ 12. The Defendants seize upon the "amount and manner" clause in this paragraph to make their estoppel argument. They further assert that the Plaintiffs accepted their payments "without complaint." This statement, however, is not reflected in the complaint. Based solely on the facts as stated in the complaint and viewed in a light most favorable to the Plaintiffs, it cannot be said that the Plaintiffs' conduct amounted to the "extraordinary circumstances" found to exist in *Rosen, supra*, and which would estop the Plaintiffs from now claiming that additional or different contributions are due from the Defendants. Thus, the Defendants' second argument for dismissal is also unpersuasive.

Accordingly, it is hereby

ORDERED and ADJUDGED that Defendants Carol Management and Resort's motion to dismiss the amended complaint is DENIED. In addition, no objections having been filed, Magistrate Judge Brown's January 19, 1995, Report and Recommendation is ADOPTED, and Defendant KSL's motion to dismiss amended complaint is DENIED.

DONE AND ORDERED.